## IN THE UNITED STATES DISTRICT COURT
## OF THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LAURA DICHRISTOFANO, )
)
      Plaintiff, )
    v. )    No.: 07 CV 2250
)
THE NEIMAN MARCUS GROUP, INC., )    Judge Kendall
OTIS ELEVATOR COMPANY AND )
UNITED TECHNOLOGIES )    Magistrate Judge Cole
CORPORATION, )
)
      Defendant. )

## THE NEIMAN MARCUS GROUP, INC.'S CROSS-CLAIM FOR CONTRIBUTION AND BREACH OF CONTRACT AGAINST OTIS ELEVATOR COMPANY AND UNITED TECHNOLOGIES CORPORATION

**NOW COMES** the Cross-Claim Plaintiff, THE NEIMAN MARCUS GROUP, INC.,

("NEIMAN MARCUS"), by its attorneys, BELGRADE AND O'DONNELL, P.C., and

complaining of Defendants, OTIS ELEVATOR COMPANY and UNITED TECHNOLOGIES

CORPORATION (herein collectively referred to as "OTIS"), and alleges as follows:

### COUNT I-CONTRIBUTION

1.      Plaintiff filed her original Complaint against, amongst others, NEIMAN

MARCUS on or about September 20, 2006, seeking damages for injuries allegedly sustained on

or about November 17, 2004 from an alleged slip and fall upon an escalator located within the

Neiman Marcus retail store located at 6 Oakbrook Center, Oakbrook, Illinois. (Plaintiff's

Complaint at Law is attached hereto and incorporated herein as Exhibit "A".)

2.      With respect to said escalator, OTIS was contracted by NEIMAN MARCUS to

perform maintenance services upon the escalator(s) located at the Neiman Marcus location


EXHIBIT
"A"

referenced in Plaintiff's Complaint at Law, including the escalator made the subject of Plaintiff's claim.

3.      Under the "Master Vertical Transportation Service Agreement" between OTIS and NEIMAN MARCUS, OTIS was responsible for Maintenance Services of the escalators located at the NEIMAN MARCUS location referenced in Plaintiff's Complaint.  SECTION 1 of said agreement defines "Maintenance Services" as follows:

1.1      When used in this Agreement, the term Maintenance Services shall mean;

a.      the regular and systematic maintenance, adjustment, lubrication, replacement and repair of all components of the Vertical Transportation Equipment except as provided in Section 1.2(d).

b.      preventative maintenance, including, but not limited to, inspection of the Vertical Transportation Equipment on regularly scheduled visits to a Neiman Marcus Facility.

c.      except as provided in 1.2(c) below, the cleaning of the Vertical Transportation Equipment, including, but not limited to, the regular and systematic cleaning of all escalator machine rooms, hoistways, top of cars and pits, escalator machinery space and truss areas.  Once every three years escalators shall be thoroughly cleaned and inspected.  Cleaning shall include the removal of a portion of the steps so that all areas of the escalator and truss can be thoroughly cleaned and lubricated.  Otis will absorb any overtime incurred during this clean down process and Neiman Marcus will allow Otis access to escalators prior to store opening time.

(See Master Vertical Transportation Service Agreement, attached and incorporated herein as Exhibit "B").

4.      OTIS owed to NEIMAN MARCUS a duty to properly maintain, repair, and inspect said escalators, including the escalator made the subject of Plaintiff's claims and a duty to otherwise fulfill and perform its obligations under the Master Vertical Transportation Agreement to which it was contractually bound.

2

5.      Notwithstanding said duty, and in breach thereof, Defendant, OTIS, committed the following careless and negligent acts or omissions:

a.      Carelessly and negligently failed to properly maintain, repair and inspect the escalator made the subject of Plaintiff's claim;

b.      Carelessly and negligently failed to maintain the escalators when it knew, or in the exercise of reasonable care, should have known, that the condition of the escalators posed a dangerous condition for persons standing/riding on said escalator;

c.      Carelessly and negligently failed to adequately inspect, maintain, and/or repair said escalator, thereby creating a hazardous condition for persons standing/ riding on said escalator;

d.      Carelessly and negligently created, and/or caused a dangerous condition to exist by failing to inspect, maintain, and/or repair said escalator, thereby creating a dangerous condition for persons standing/riding on said escalator; and

e.      Carelessly and negligently failed to properly perform its obligations under the Master Vertical Transportation Agreement.

6.      NEIMAN MARCUS has denied that it breached any duty which it may be found to have owed to Plaintiff and further denied that it has any liability or fault for the injuries and damages claimed in Plaintiffs' Complaint. (See NEIMAN MARCUS' Answer and Affirmative Defenses to Plaintiff's Complaint at Law, attached hereto and incorporated herein as Exhibit "C").

7.      At the time of the alleged occurrence there existed in the State of Illinois a law commonly known as the Illinois Contribution Among Joint Tortfeasors Act, set forth in 740 ILCS Sec. 100/0.01 et seq.

3

8.      In the event that NEIMAN MARCUS is found to be liable to Plaintiff for negligence (which liability is expressly denied by NEIMAN MARCUS), NEIMAN MARCUS' liability is a direct and proximate result of the negligent acts or omissions of OTIS and NEIMAN MARCUS has a right of recovery against OTIS for OTIS' proportionate percentage of fault in causing Plaintiff's accident and claimed damages pursuant to the Contribution Among Joint Tortfeasors Act, set forth in 740 ILCS § 100/.01 et seq.

**WHEREFORE** Cross-Plaintiff, THE NEIMAN MARCUS GROUP, INC., prays that in the event judgment is entered against it and in favor of Plaintiff, LAURA DICHRISTOFANO, judgment for contribution be entered in its favor and against Cross-Defendants, in an amount commensurate with the relative degree of fault attributable to Cross-Defendants, OTIS, in this action, and to the extent allowed by law.

## COUNT II – BREACH OF CONTRACT

1-6.    Third-Party Plaintiff, NEIMAN MARCUS, repeats and re-alleges Paragraphs 1-6 of Count I of this Cross-Claim Complaint as Paragraphs 1-6 of Count II as if fully pleaded and incorporated herein.

7.      In entering in the Master Vertical Transportation Service Agreement with THE NEIMAN MARCUS GROUP, OTIS agreed to provide certain services as defined in the contract for the elevators and escalators in NEIMAN MARCUS retail stores. (See Master Vertical Transportation Service Agreement, Exhibit "B", pg. 1).

8.      In part, this contract provided the following terms concerning the Conduct of Operations of OTIS with respects to the elevators and escalators:

4

## SECTION 3. Conduct of Operations

**Section 3.1.** Contractor shall use all reasonable care to maintain the Vertical Transportation Equipment in proper and safe working condition in accordance with the highest standards known to the industry; and shall furnish all supplies, materials, parts, labor, labor supervision, tools, equipment and lubricants necessary to provide Maintenance Services. All of the foregoing furnished by Contractor shall be of the highest quality.

(See Exhibit "B", Master Vertical Transportation Service Agreement, pg. 3).

9. In addition, the Master Vertical Transportation Service Agreement also provided that OTIS was to fully protect and indemnify NEIMAN MARCUS from any and all claims for damages that arose out of or relating to work to be provided by OTIS, including acts or omissions by OTIS, as the Master Vertical Transportation Service Agreement states:

**Section 6. Responsibility and Liability**. Otis shall, if so directed by Neiman Marcus, cooperate in the defense of suits brought against Neiman Marcus based on accidents involving the equipment and/or service. Otis shall indemnify, and hold harmless Neiman Marcus, its affiliates and their respective directors, officers, employees, agents and representatives and their respective successors and assigns (the "Indemnified Parties"), from and against all liability, demands, claims, actions or causes of action, assessments, losses, fines, penalties, costs, damages and expenses for personal injury or property damage, including reasonable attorney's fees ( collectively "Damages") sustained or incurred by any of the Indemnified Parties as a result of or arising out of or relating to the work to be provided hereunder, or to the extent caused by Otis' acts or omissions, but not to the extent caused by others.

For purposes of this Section 6, "Claims" shall be defined as follows: "Claims" shall mean all proceedings asserting that an Indemnified Person is or may be liable for monetary or other obligations which may constitute or result in damages, or injunctive or other equitable relief, in each case for which such Indemnified Person may be entitled to indemnification pursuant to this section 6.

(See Exhibit "B", Master Vertical Transportation Service Agreement, pg. 11).

10. Further, Section 6 of the Master Vertical Transportation Service Agreement provides as follows:

5

**SECTION 6. <u>Financial Responsibility, Indemnification and Insurance</u>.**

Contractor shall maintain at its own expense the following policies of insurance from reputable amounts required by law and sufficient to fully protect Contractor and Neiman from and against any and all claims, damages, losses, expenses, liens, causes of action, suits, demands, judgments [sic] and liabilities, and attorneys' fees.

a.      Worker's compensation and Employer's Liability Insurance.

b.      Commercial General Liability for Bodily Injury and Property Damage with limits per Otis' Standard Certificate.

c.      Comprehensive Automobile Liability for Bodily Injury and Property Damage with Limits of $2,000,000 per Otis' Standard Certificate. A separate certificate for Nevada Location will be provided.

(<u>See</u> Exhibit "B", Master Vertical Transportation Service Agreement, pg. 10).

11.      On April 8, 2005, in accordance with the terms of the Master Vertical Transportation Service Agreement, NEIMAN MARCUS sent a letter to OTIS, tendering its defense and in response, OTIS, on April 15, 2005, initially stated that because they were conducting an investigation, they were not in a position to address the tender request at that time. (See April 2005 letter, attached and incorporated herein as Exhibit "D").

12.      Thereafter, on July 29, 2005, OTIS responded to NEIMAN MARCUS' tender of defense in writing, denying the tender, stating that upon review of the contract, there was no language with respect to defense and indemnification. (<u>See</u> July 2005 letter, attached and incorporated herein as Exhibit "E").

13.      On August 23, 2005, in reply to OTIS denial of tender, NEIMAN MARCUS again referenced the parties contract and tendered its defense to OTIS. (<u>See</u> August 2005 letter, attached and incorporated herein as Exhibit "F").

14.      On March 23, 2006, having received no response to its August 23, 2005 tender, and again in accordance with the terms of the contract, NEIMAN MARCUS sent a further letter

to OTIS, tendering its defense. (See March 2006 Tender, attached and incorporated herein as Exhibit "G").

15.     On June 30, 2006, OTIS sent a letter to NEIMAN MARCUS, stating that it would adhere and comply with the terms and conditions of the contract that was in place at the time of the loss.  (See June 2006 letter, attached and incorporated herein as Exhibit "H").

16.     On December 15, 2006, NEIMAN MARCUS sent a further letter to OTIS asking for clarification as to what was meant by the previous letter and if OTIS would defend and indemnify NEIMAN MARCUS in the underlying DiChristofano Complaint.  (See December 2006 Tender, attached and incorporated herein as Exhibit "I").

17.     On April 18, 2007, NEIMAN MARCUS again sent a letter to OTIS asking for it to accept NEIMAN MARCUS' tender of defense on the underlying DiChristofano Complaint. (See April 2007 Tender letter, attached and incorporated herein as Exhibit "J").

18.     On June 4, 2007, OTIS sent a letter to NEIMAN MARCUS denying the tender of defense. (See denial letter, attached and incorporated herein as Exhibit "K").

19.     Notwithstanding its obligation under the aforementioned Master Vertical Transportation Service Agreement, OTIS breached their contract with NEIMAN MARCUS by wrongfully failing to properly perform its obligations under said agreement.

20.     Further, OTIS breached their contract by wrongfully failing to provide a defense and indemnification relative to the lawsuit at issue in the DiChristofano Complaint.

21.     Additionally, OTIS failed to procure and provide the required insurance coverage to "fully protect" NEIMAN MARCUS "from and against any and all claims, damages, losses, expenses, liens, causes of action, suits, demands, judgments, and liabilities and attorney's fees," as required under the Master Vertical Transportation Service Agreement as well.

22.    As a direct and proximate result of one or more breaches of contract by OTIS, NEIMAN MARCUS has been damaged, including incurring the expense of its defense to the DiChristofano Complaint and related attorney fees and costs, and being monetarily exposed to liability by way of a money judgment or settlement in reference to the DiChristofano Complaint.

**WHEREFORE**, Third-Party Plaintiff, THE NEIMAN MARCUS GROUP, INC., prays that this Court award damages against Cross-Defendant, OTIS, personally, in the appropriate amount as proven at trial, including but not limited to, finding that said Defendants must defend THE NEIMAN MARCUS GROUP, INC. and reimburse any attorneys' fees and costs related to its defense to the DICHRISTOFANO Complaint and indemnify and/or reimburse them for the payment of any judgment or settlement rendered therein and grant to THE NEIMAN MARCUS GROUP, INC. such other and further relief as it deems fit and proper.


                                        **THE NEIMAN MARCUS GROUP, INC.**

                                By:_____
                                        One of Its Attorneys


George M. Velcich
James Saranteas
Ross M. Kucera
**BELGRADE AND O'DONNELL, P.C.**
20 North Wacker Drive, Suite 1900
Chicago, Illinois  60606
312/422-1700

8

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
### COUNTY DEPARTMENT, LAW DIVISION

LAURA DiCHRISTOFANO, )
)
Plaintiff, )
)
v. )  No.
)
THE NEIMAN-MARCUS GROUP, INC., )
OTIS ELEVATOR COMPANY, and )  *Plaintiff Demands Trial By Jury*
UNITED TECHNOLOGIES )
CORPORATION )
)
Defendants )

## COMPLAINT AT LAW

### COUNT I

### NEGLIGENCE - THE NEIMAN-MARCUS GROUP, INC.

Plaintiff, LAURA DiCHRISTOFANO, through her attorneys, CLIFFORD LAW OFFICES, complaining of Defendant, THE NEIMAN-MARCUS GROUP, INC., a Delaware corporation, states as follows:

1.    At all times relevant herein, Plaintiff, LAURA DiCHRISTOFANO was a resident of the city of Berwyn, County of Cook, State of Illinois.

2.    At all times relevant herein, Defendant, THE NEIMAN-MARCUS GROUP, INC., was a Delaware corporation doing business in the County of Cook, and the State of Illinois.

3.    On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., owned certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.



4. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., operated certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

5. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., managed certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

6. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., maintained certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

7. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., supervised certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

8. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., controlled certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

9. At all times relevant herein, said property offered pedestrian escalators within the facility for the use and benefit of persons lawfully on the property.

10. At all times relevant herein, THE NEIMAN MARCUS GROUP, INC., through its agents, servants, and employees oversaw the operation of aforementioned retail shopping facility, including escalators located therein.

2

11.     At all times relevant herein, THE NEIMAN MARCUS GROUP, INC., through its agents, servants, and employees oversaw the maintenance of aforementioned retail shopping facility, including escalators located therein.

12.     At all times relevant herein, THE NEIMAN MARCUS GROUP, INC., through its agents, servants, and employees oversaw the repair of aforementioned retail shopping facility, including escalators located therein.

13.     On November 17, 2004, Plaintiff, Laura DiCHRISTOFANO entered the Neiman Marcus retail shopping facility located at 6 Oakbrook Center as an invitee of Defendant, THE NEIMAN-MARCUS GROUP, INC., for the purpose of browsing for retail goods.

14.     On the aforementioned date and at the aforementioned place, Plaintiff, LAURA DiCHRISTOFANO needed to use certain escalators offered to pedestrians within the Defendant's facility to gain access to a different floor.

15.     At all times relevant herein, Defendant, THE NEIMAN-MARCUS GROUP, INC., knew that patrons used the escalators as a principal means of egress to and from upper and lower floors.

16.     At all times relevant herein, Defendant, THE NEIMAN-MARCUS GROUP, INC., knew, or in the exercise of reasonable care should have known, that said means of egress posed an unreasonable risk of harm to patrons using same.

17.     At all times relevant herein, Defendant, THE NEIMAN-MARCUS GROUP, INC., knew, or in the exercise of reasonable care should have known, that patrons using the escalators within their facility would encounter an unreasonably dangerous condition known or created by

3

Case 1:07-cv-02... Document 8-2 Filed 05/10/2... Page 12 of 61 PageID #:140
Case 1:07-cv-02450 Document #: 24-2 Filed: 08/03/07 Page 12 of 61 PageID #:140-643
NEIMAN MARCUS LEGAL DEPT
☒008/019

Defendant, THE NEIMAN-MARCUS GROUP, INC., through its agents, servants, and/or employees.

18. At all times relevant herein, Defendant, THE NEIMAN-MARCUS GROUP, INC., had a duty to operate, maintain, and control the premises, and more specifically, the escalators, with due care and caution so as not to injure persons lawfully on said premises.

19. Notwithstanding said duty, and in breach thereof, Defendant, THE NEIMAN-MARCUS GROUP, INC., was guilty of the following negligent acts or omissions:

    a. Carelessly failed to maintain the escalators when it knew, or in the exercise of reasonable care should have known, that the condition of the escalators posed an unreasonably dangerous condition for patrons standing/riding on same;

    b. Failed to adequately inspect, maintain, and/or repair said escalators, thereby creating a hazardous condition for its invitees standing/riding on same;

    c. Carelessly created, and/or caused a dangerous condition to exist by failing to inspect, maintain, and/or repair said escalators thereby creating an unreasonably dangerous condition for invitees standing/riding on same;

    d. Carelessly created, and/or allowed the creation and existence of a principal means of egress to upper and lower floors of its facility which violated the customs and practices and standards of commercial property maintenance which require such areas to be free of such hazards;

    e. Carelessly failed to warn its invitees, including Plaintiff, LAURA DiCHRISTOFANO, of the aforementioned unreasonably dangerous conditions of the escalators on its premises; and

    f. Carelessly operated said escalator during business hours on the date of the occurrence.

20. As a direct and proximate cause of one or more of the aforementioned negligent acts and/or omissions of Defendant, THE NEIMAN-MARCUS GROUP, INC., the escalator upon which the Plaintiff, LAURA DiCHRISTOFANO, was lawfully riding suddenly stopped and jerked,

4

Feb-07-2007 08:56am From-AJMCGUANT

Case Case 1:07-cv-02250 Document # 24-2 Filed: 08/03/07 Page 13 of 61 PageID #:141
02/02/2007 14:37 FAX
NEIMAN MARCUS LEGAL DEPT
☒008/018

throwing the Plaintiff forward and causing her to twist her body and impact the descending steps of said escalator awkwardly and unnaturally, severely injuring herself.

21.　As a further direct and proximate cause of one or more of the aforementioned negligent acts and/or omissions of Defendant, THE NEIMAN-MARCUS GROUP, INC., Plaintiff, LAURA DiCHRISTOFANO, sustained severe, permanent, and painful injuries, both internally and externally, requiring extensive and expensive medical treatment, and will continue to require same, for which she has become liable for and will continue to become liable for large sums of money endeavoring to become healed, was and will be prevented from attending the usual duties and affairs of her life, and lost and continues to lose the value of that time.

WHEREFORE, Plaintiff, LAURA DiCHRISTOFANO, demands judgment against Defendant, THE NEIMAN-MARCUS GROUP, INC., in the amount in excess of FIFTY THOUSAND DOLLARS ($50,000).

## COUNT II

## NEGLIGENCE - COMMON CARRIER-THE NEIMAN-MARCUS GROUP, INC.

Plaintiff, LAURA DiCHRISTOFANO, through her attorneys, CLIFFORD LAW OFFICES, complaining of Defendant, THE NEIMAN-MARCUS GROUP, INC., a Delaware corporation, states as follows:

1.　At all times relevant herein, Plaintiff, LAURA DiCHRISTOFANO was a resident of the city of Berwyn, County of Cook, State of Illinois.

2.　At all times relevant herein, Defendant, THE NEIMAN-MARCUS GROUP, INC., was a Delaware corporation doing business in the County of Cook, and the State of Illinois.

5

3. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., owned certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

4. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., operated certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

5. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., managed certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

6. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., maintained certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

7. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., supervised certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

8. On and before November 17, 2004, THE NEIMAN-MARCUS GROUP, INC., controlled certain commercial property at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

9. At all times relevant herein, said property offered pedestrian escalators within the facility for the use and benefit of persons lawfully on the property.

6

10.    At all times relevant herein, THE NEIMAN MARCUS GROUP, INC., through its agents, servants, and employees oversaw the operation of aforementioned retail shopping facility, including escalators located therein.

11.    At all times relevant herein, THE NEIMAN MARCUS GROUP, INC., through its agents, servants, and employees oversaw the maintenance of aforementioned retail shopping facility, including escalators located therein.

12.    At all times relevant herein, THE NEIMAN MARCUS GROUP, INC., through its agents, servants, and employees oversaw the repair of aforementioned retail shopping facility, including escalators located therein.

13.    At all times relevant herein, Defendant, THE NEIMAN-MARCUS GROUP, INC., was a common carrier.

14.    Defendant, THE NEIMAN-MARCUS GROUP, INC., as a common carrier operating an escalator at the aforementioned retail shopping facility at the time of the occurrence, owed Plaintiff, LAURA DiCHRISTOFANO, a passenger on said escalator, the highest degree of care to protect her from the danger of injury which it knew or should have anticipated while riding said escalator, from facts and circumstances known to it.

15.    Notwithstanding said duty, the Defendant, THE NEIMAN-MARCUS GROUP, INC., through its agents, servants, and employees, or others for whom it was vicariously liable, was guilty of one or more of the following acts or omissions:

   a.    Carelessly failed to maintain the escalators when it knew, or in the exercise of reasonable care should have known, that the condition of the escalators posed an unreasonably dangerous condition for patrons standing/riding on same;

7

     b.    Failed to adequately inspect, maintain, and/or repair said escalators, thereby creating a hazardous condition for its invitees standing/riding on same;

     c.    Carelessly created, and/or caused a dangerous condition to exist by failing to inspect, maintain, and/or repair said escalators thereby creating an unreasonably dangerous condition for invitees standing/riding on same;

     d.    Carelessly created, and/or allowed the creation and existence of a principal means of egress to upper and lower floors of its facility which violated the customs and practices and standards of commercial property maintenance which require such areas to be free of such hazards;

     e.    Carelessly failed to warn its invitees, including Plaintiff, LAURA DiCHRISTOFANO, of the aforementioned unreasonably dangerous conditions of the escalators on its premises; and

     f.    Carelessly operated said escalator during business hours on the date of the occurrence.

16.    As a direct and proximate cause of one or more of the aforementioned negligent acts and/or omissions of Defendant, THE NEIMAN-MARCUS GROUP, INC., the escalator upon which the Plaintiff, LAURA DiCHRISTOFANO, was lawfully riding suddenly stopped and jerked, throwing the Plaintiff forward and causing her to twist her body and impact the descending steps of said escalator awkwardly and unnaturally, severely injuring herself.

17.    As a direct and proximate cause of one or more of the aforementioned acts or omissions of Defendant, THE NEIMAN-MARCUS GROUP, INC., Plaintiff, LAURA DiCHRISTOFANO sustained severe, permanent, and painful injuries, both internally and externally, requiring extensive and expensive medical treatment, and will continue to require same, for which she has become liable for and will continue to become liable for large sums of money endeavoring to become healed, was and will be prevented from attending the usual duties and affairs of her life, and lost and continues to lose the value of that time.

8

Feb-07-2007 08:58am From-AJMCGUANE

Case 1:07-cv-02250 Document #: 2-2 Filed: 05/10/... Page 17 of 61 PageID #:145
02/02/2007 14:37 FAX          NEIMAN MARCUS LEGAL DEP'T                    ☒013/019

WHEREFORE, Plaintiff, LAURA DiCHRISTOFANO, demands judgment against Defendant, THE NEIMAN-MARCUS GROUP, INC., in the amount in excess of FIFTY THOUSAND DOLLARS ($50,000).

### COUNT III - NEGLIGENCE - UNITED TECHNOLOGIES CORPORATION

Plaintiff, LAURA DiCHRISTOFANO, through her attorneys, CLIFFORD LAW OFFICES, complaining of Defendant, UNITED TECHNOLOGIES CORPORATION, an Alabama corporation, states as follows:

1.     At all times relevant herein, Plaintiff, LAURA DiCHRISTOFANO was a resident of the city of Berwyn, County of Cook, State of Illinois.

2.     At all times relevant herein, Defendant, UNITED TECHNOLOGIES CORPORATION was an Alabama corporation doing business in the County of Cook and the State of Illinois.

3.     On and before November 17, 2004, UNITED TECHNOLOGIES CORPORATION manufactured certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

4.     On and before November 17, 2004, UNITED TECHNOLOGIES CORPORATION sold certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

5.     On and before November 17, 2004, UNITED TECHNOLOGIES CORPORATION distributed certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

9

6.  On and before November 17, 2004, UNITED TECHNOLOGIES CORPORATION installed certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

7.  On and before November 17, 2004, UNITED TECHNOLOGIES CORPORATION maintained certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

8.  On and before November 17, 2004, UNITED TECHNOLOGIES CORPORATION supervised certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

9.  On and before November 17, 2004, UNITED TECHNOLOGIES CORPORATION controlled certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

10. At all times relevant herein, UNITED TECHNOLOGIES CORPORATION, through its agents, servants, and employees oversaw the operation of aforementioned escalators.

11. At all times relevant herein, UNITED TECHNOLOGIES CORPORATION, through its agents, servants, and employees oversaw the maintenance of aforementioned escalators.

12. At all times relevant herein, UNITED TECHNOLOGIES CORPORATION, through its agents, servants, and employees oversaw the repair of aforementioned escalators.

13. On November 17, 2004, Plaintiff, Laura DiCHRISTOFANO entered the Neiman Marcus retail shopping facility located at 6 Oakbrook Center as an invitee of Defendant, THE NEIMAN-MARCUS GROUP, INC., for the purpose of browsing for retail goods.

10

14.     On the aforementioned date and at the aforementioned place, Plaintiff, LAURA

DiCHRISTOFANO needed to use certain escalators offered to pedestrians within the Defendant,

THE NEIMAN-MARCUS GROUP, INC.'s, retail shopping facility to gain access to a different

floor.

15.     At all times relevant herein, Defendant, UNITED TECHNOLOGIES

CORPORATION had a duty to operate, maintain, and control the escalators with due care and

caution so as not to injure persons lawfully riding said escalators.

16.     Notwithstanding said duty, and in breach thereof, Defendant, UNITED

TECHNOLOGIES CORPORATION, was guilty of the following negligent acts or omissions:

a.      Carelessly failed to maintain the escalators when it knew, or in the exercise
        of reasonable care should have known, that the condition of the escalators
        posed an unreasonably dangerous condition for patrons standing/riding on
        same;

b.      Failed to adequately inspect, maintain, and/or repair said escalators, thereby
        creating a hazardous condition for its invitees standing/riding on same;

c.      Carelessly created, and/or caused a dangerous condition to exist by failing to
        inspect, maintain, and/or repair said escalators thereby creating an
        unreasonably dangerous condition for invitees standing/riding on same;

17.     As a direct and proximate cause of one or more of the aforementioned negligent acts

and/or omissions of Defendant, UNITED TECHNOLOGIES CORPORATION, the escalator upon

which the Plaintiff, LAURA DiCHRISTOFANO, was lawfully riding suddenly stopped and jerked,

throwing the Plaintiff forward and causing her to twist her body and impact the descending steps of

said escalator awkwardly and unnaturally, severely injuring herself.

18.     As a further direct and proximate cause of one or more of the aforementioned

negligent acts and/or omissions of Defendant, UNITED TECHNOLOGIES CORPORATION,

11

Feb-07-2007  08:58am  From-AJMCGUAN
02/0512007  14:5V FAX
Case 1:07-cv-022    Document 8-2    Filed 05/10/2C    Page 12 of 15
Case 07:07-CV-01250 Document #: 24-2 Filed: 08/03/07 Page 20 of 61 PageID #:148
NEIMAN MARCUS LEGAL DEPT
016/018
-643

Plaintiff, LAURA DiCHRISTOFANO, sustained severe, permanent, and painful injuries, both internally and externally, requiring extensive and expensive medical treatment, and will continue to require same, for which she has become liable for and will continue to become liable for large sums of money endeavoring to become healed, was and will be prevented from attending the usual duties and affairs of her life, and lost and continues to lose the value of that time.

WHEREFORE, Plaintiff, LAURA DiCHRISTOFANO, demands judgment against Defendant, UNITED TECHNOLOGIES CORPORATION in the amount in excess of FIFTY THOUSAND DOLLARS ($50,000).

## COUNT III - NEGLIGENCE - OTIS ELEVATOR COMPANY

Plaintiff, LAURA DiCHRISTOFANO, through her attorneys, CLIFFORD LAW OFFICES, complaining of Defendant, OTIS ELEVATOR COMPANY, a New Jersey corporation, states as follows:

1.    At all times relevant herein, Plaintiff, LAURA DiCHRISTOFANO was a resident of the city of Berwyn, County of Cook, State of Illinois.

2.    At all times relevant herein, Defendant, OTIS ELEVATOR COMPANY was a New Jersey corporation doing business in the County of Cook and the State of Illinois.

3.    On and before November 17, 2004, OTIS ELEVATOR COMPANY manufactured certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

4.    On and before November 17, 2004, OTIS ELEVATOR COMPANY sold certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

12

Feb-07-2007 00:59am From-AJMCSI

Case 1:07-cv-02256 Document 8-2 Filed 05/10/2006 Page 13 of 15 1-149

02/02/2007 14:38 FAX

NEIMAN MARCUS LEGAL DEPT

☒017/019

Case 1:07-cv-02256 Document #: 24-2 Filed: 08/09/07 Page 21 of 61 PageID #:702

5.      On and before November 17, 2004, OTIS ELEVATOR COMPANY distributed certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

6.      On and before November 17, 2004, OTIS ELEVATOR COMPANY installed certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

7.      On and before November 17, 2004, OTIS ELEVATOR COMPANY maintained certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

8.      On and before November 17, 2004, OTIS ELEVATOR COMPANY supervised certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

9.      On and before November 17, 2004, OTIS ELEVATOR COMPANY controlled certain escalators present at 6 Oakbrook Center in the City of Oakbrook, County of DuPage, State of Illinois, operating same as a retail shopping facility.

10.     At all times relevant herein, OTIS ELEVATOR COMPANY, through its agents, servants, and employees oversaw the operation of aforementioned escalators.

11.     At all times relevant herein, OTIS ELEVATOR COMPANY, through its agents, servants, and employees oversaw the maintenance of aforementioned escalators.

12.     At all times relevant herein, OTIS ELEVATOR COMPANY, through its agents, servants, and employees oversaw the repair of aforementioned escalators.

13

Feb-07-2007 09:59am From-AHKG

Case: 1:07-cv-02256 Document #: 24-2 Filed: 05/10/07 Page 22 of 61 PageID #:150

02/02/2007 14:38 FAX

T-647 P.020/021 F-643

NEIMAN MARCUS LEGAL DEPT

@018/019

13.     On November 17, 2004, Plaintiff, Laura DiCHRISTOFANO entered the Neiman Marcus retail shopping facility located at 6 Oakbrook Center as an invitee of Defendant, THE NEIMAN-MARCUS GROUP, INC., for the purpose of browsing for retail goods.

14.     On the aforementioned date and at the aforementioned place, Plaintiff, LAURA DiCHRISTOFANO needed to use certain escalators offered to pedestrians within the Defendant, THE NEIMAN-MARCUS GROUP, INC.'s, retail shopping facility to gain access to a different floor.

15.     At all times relevant herein, Defendant, OTIS ELEVATOR COMPANY had a duty to operate, maintain, and control the escalators with due care and caution so as not to injure persons lawfully riding said escalators.

16.     Notwithstanding said duty, and in breach thereof, Defendant, OTIS ELEVATOR COMPANY, was guilty of the following negligent acts or omissions:

        a.     Carelessly failed to maintain the escalators when it knew, or in the exercise of reasonable care should have known, that the condition of the escalators posed an unreasonably dangerous condition for patrons standing/riding on same;

        b.     Failed to adequately inspect, maintain, and/or repair said escalators, thereby creating a hazardous condition for its invitees standing/riding on same;

        c.     Carelessly created, and/or caused a dangerous condition to exist by failing to inspect, maintain, and/or repair said escalators thereby creating an unreasonably dangerous condition for invitees standing/riding on same;

17.     As a direct and proximate cause of one or more of the aforementioned negligent acts and/or omissions of Defendant, OTIS ELEVATOR COMPANY, the escalator upon which the Plaintiff, LAURA DiCHRISTOFANO, was lawfully riding suddenly stopped and jerked, throwing

14

NEIMAN MARCUS LEGAL DEPT

the Plaintiff forward and causing her to twist her body and impact the descending steps of said escalator awkwardly and unnaturally, severely injuring herself.

18.    As a further direct and proximate cause of one or more of the aforementioned negligent acts and/or omissions of Defendant, OTIS ELEVATOR COMPANY, Plaintiff, LAURA DiCHRISTOFANO, sustained severe, permanent, and painful injuries, both internally and externally, requiring extensive and expensive medical treatment, and will continue to require same, for which she has become liable for and will continue to become liable for large sums of money endeavoring to become healed, was and will be prevented from attending the usual duties and affairs of her life, and lost and continues to lose the value of that time.

WHEREFORE, Plaintiff, LAURA DiCHRISTOFANO, demands judgment against Defendant, OTIS ELEVATOR COMPANY in the amount in excess of FIFTY THOUSAND DOLLARS ($50,000).

J. Ryan Potts
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street, 31st Floor
Chicago, Illinois 60602
(312) 899-9090
Attorney # 32640

Attorney for Plaintiff

15

Rev10-24-00Final

# MASTER VERTICAL TRANSPORTATION SERVICE AGREEMENT

THIS MASTER VERTICAL TRANSPORTATION SERVICE AGREEMENT (the "Agreement") is entered into as of August 1, 2000 between The Neiman Marcus Group, Inc. d/b/a Neiman Marcus, a Delaware corporation, hereinafter referred to as "Neiman Marcus", and Otis Elevator Company, with its principal place of business at One Farm Springs, Farmington, CT 60632-2500, hereinafter referred to as "Contractor".

## RECITALS

WHEREAS, Neiman Marcus owns and operates retail stores nationwide (the "Stores"), and hereby grants to Contractor the non-exclusive right to provide Maintenance Services as defined in Section 1 of this Agreement for the elevators and escalators ("Vertical Transportation Equipment") to be described in individual schedules to be executed by the parties in substantially the same form as Exhibit A, attached hereto and incorporated herein by this reference (the "Maintenance Schedule") all in accordance with and subject to the terms and conditions set forth below. As used herein "Neiman Marcus" shall mean and include all of Neiman Marcus affiliated divisions and subsidiaries, and Maintenance Schedules may be completed and executed in the name of and by any such Neiman Marcus affiliate.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth in this Agreement, Neiman Marcus and Contractor agree as follows:

## SECTION 1

### Definitions

1.1     When used in this Agreement, the term Maintenance Services shall mean;

    a.     the regular and systematic maintenance, adjustment, lubrication, replacement and repair of all components of the Vertical Transportation Equipment except as provided in Section 1.2 (d) below;

    b.     preventative maintenance, including, but not limited to, inspection of the Vertical Transportation Equipment on regularly scheduled visits to a Neiman Marcus Facility.

    c.     except as provided in 1.2 (c) below, the cleaning of the Vertical Transportation Equipment, including, but not limited to, the regular and systematic cleaning of all elevator machine rooms, hoistways, top of cars and pits, escalator machinery space and truss areas. Once every three years escalators shall be thoroughly cleaned and inspected. Cleaning shall include the removal of a portion of the steps so that all areas of the escalator and truss can be thoroughly cleaned and lubricated. Otis will absorb any overtime incurred during this clean down process and Neiman Marcus will allow Otis access to Escalators prior to store opening time.



02/18/2005 20:52 FAX 630 572 31
02/11/2005    NM PROP MGMT
847 619 2921 TO 13124221717    P.04
Case: 1:07-cv-02250 Document #: 24-2 Filed: 08/03/07 Page 25 of 61 PageID #:153

Rev1C-24-00Final

1.2     Maintenance Services shall not be deemed to include the following;

    a.     repair or replacement of building items, such as hoistway or machine room walls and floors, car enclosures, car finish floor material, hoistway entrance frames, doors and sills, telephone instrument and signal fixture faceplates, smoke detectors and communication equipment.

       If any of these components are in need of replacement, the Contractor shall be compensated for such replacement. The Contractor shall provide a one-year warranty on these items.

    b.     repair and replacement of mainline disconnect switches, fuses and feeders to control panels underground buried piping, cylinders and plungers.

    c.     cleaning of car interiors, exposed portions of sills, escalator steps, plates, handrails and balustrades; and

    d.     repair and replacement of escalator balustrades, escalator glass panels, decorative lighting and wedge guards.

    e.     The Contractor shall take responsible steps to be informed of such and shall appraise Neiman Marcus of such laws, ordinances, regulations and orders. Contractor is not required under this agreement to install new attachments, as may be recommended or directed by insurance companies, federal, state, municipal or governmental authorities, subsequent to the date of this contract.

## SECTION 2

### Term

2.1     The initial term ("Initial Term") of this Agreement shall commence on the date hereof and shall terminate at midnight of the day preceding the tenth, (10th) annual anniversary of the date hereof, unless sooner terminated as herein provided. This Agreement supercedes any and all previous agreements and contracts between both parties concerning maintenance services. Upon termination of this Agreement, all other agreements and contracts between the parties shall terminate, as well.

2.2     Neiman Marcus has the right to terminate the remaining term of this Agreement at any time if Otis is found to be in default of the contract terms. Neiman Marcus will require a performance review, beginning in January 2001 and annually thereafter, during the term of this Agreement to determine performance levels. Contractor shall have thirty (30) days after Neiman Marcus written notice in order to commence and cure a deficiency before the provisions of this Article shall apply.

2.3     The word "term" as used elsewhere in this Agreement, shall mean the Original Term and the Renewal Term, unless the context shall obviously require a different construction.

APR 18 2007 10:16 FR LIBERTY MUTUAL          847 619 2921 TO 13124221717          P.05
02/16/2005 20:52 FAX 930 X72 SU          NM OIIIS MINIT
02/11/2005 16:07 FAX 2147602060

Case 2:05-cv-04182-SRD Document 2442 Filed: 08/03/07 Page 26 of 61 PageID #:154

Rev10-24-00Final

2.4    In order to add additional equipment in new or existing stores to the agreement, both parties shall mutually agree to the contract price and the store will be added to the equipment schedule, using Exhibit A.

2.5    All equipment added to this Agreement will be given appropriate national service discount, extended term discount, and advance billing discount. These discounts will be subtracted from the Contractor's gross billing.

## SECTION 3

### Conduct of Operations

3.1    Contractor shall use all reasonable care to maintain the Vertical Transportation Equipment in proper and safe working condition in accordance with the highest standards known to the industry; and shall furnish all supplies, materials, parts, labor, labor supervision, tools, equipment and lubricants necessary to provide Maintenance Services. All of the foregoing furnished by Contractor shall be of the highest quality.

Otis Elevator Company will maintain the equipment per the manufacturer's specifications. Neiman Marcus must approve any deviation from this.

### OTIS MAINTENANCE MANAGEMENT SYSTEM$^{SM}$

Otis will use the Otis Maintenance Management System$^{SM}$ preventive maintenance program to deliver service tailored to Neiman Marcus' specific building needs. Equipment type, component life, equipment usage, and building environment will be taken into account by the OMMS® scheduling system, which will be used to plan maintenance activities in advance. The Units will be provided with devices by Otis to monitor equipment usage. Otis will use OMMS® standard work processes developed and continuously improved by Otis.

Without limiting the foregoing, Contractor shall use and supervise properly trained personnel and provide only new and genuine parts used by the manufacturers of the Vertical Transportation Equipment and lubricants obtained from and/or recommended by such manufacturers. Contractor, however, may with the prior consent of Neiman Marcus have parts rebuilt to an "as new" condition equal to or exceeding that required by manufacturer's specifications for rebuilt parts. In the event a new part cannot be obtained and the old part cannot be rebuilt, Otis may upgrade to a part of greater quality. In this case, Otis may be reimbursed for that part of the cost that is greater than the cost of an original replacement as long as the upgrade provides enhanced performance to the equipment.

Contractor shall not remove any part of the Vertical Transportation Equipment from the Stores without the prior written consent of Neiman Marcus Property Management Group.

3.2    Contractor must store basic repair parts, supplies and equipment, as listed on Page 4 of this document, in each of the Stores. Such parts will be located in an area or areas as designated by Neiman Marcus in its sole and absolute discretion; and such areas may be changed from time

APR 18 2007 10:16 FR LIBERTY MUTUAL        847 619 2921 TO 13124221717        P.06
02/16/2005 20:51 FAX 930 972-55
02/11/2005 15:06: FAX 847 572-8260  Document #: 24-2  Filed: 08/03/07 Page 27 of 61 PageID #:155

Rcv10-24-00Final

to time by Neiman Marcus which shall have no liability whatsoever to Contractor, its employees, agents or contractors or any third party whatsoever with respect to such stored supplies and equipment including, without limitation, any liability with respect to the loss of or damage to such supplies and equipment. Contractor, at its own cost, shall provide fully lockable cabinet(s) to store these items, which shall be accessed only by Contractor.

## BASIC PARTS ON JOB FOR MAINTENANCE

### Escalators

♦ Comb Plates
♦ Controller parts (i.e., Contacts, Shunts, Coils of appropriate sizes)
♦ Step Rollers (stored in mechanical room)
♦ Drive Rollers (if applicable)
♦ Friction Device Parts
♦ Grease, Cleaners, Oilers, Oil, Rags, Appropriate Lubricants
♦ Step Keys (if applicable)
♦ Spare Step or Step Tread
♦ Barricades
♦ Appropriate Fuses

### Elevators

♦ Controller Parts (i.e., Contact Shunts, Coils, Fuses, Fuse Overloads [if applicable])
♦ Hydraulic Fluid (if applicable)
♦ Motor Brushes (if applicable)
♦ Selector Parts (if applicable)
♦ Buttons
♦ Door Rollers and Interlock Parts
♦ Buffer Oil (if applicable)
♦ Grease, Grease Gun, Oil, Oilers, Rags and Appropriate Lubricants
♦ Roller Guide (if applicable)
♦ Transformers or Rectifiers (depending on type and availability)

NOTE: The above inventory represents a suggested list and Otis may adjust the inventory as necessary to reduce unplanned downtime. Parts used for other than normal wear and tear will be replaced and billed as normal.

## PARTS INVENTORY

Otis will during the term of this Contract maintain, in the elevator machine room or as part of our examiner's mobile inventory, a supply of frequently used replacement parts and lubricants selected by Otis to meet the specific requirements of the Units. Any parts replaced under this Contract will be with new parts manufactured or selected by Otis or with parts refurbished to Otis standards. Replacement parts stored in the machine room remain our property until installed in the Units. Otis will furnish replacement parts in exchange for the parts replaced. Otis further agrees to maintain a supply of

APR 18 2007 10:16 FR LIBERTY MUTUAL    847 619 2921 TO 13124221717    P.07
02/11/2005 16:09 FAX 021ev02250 Document #: 24-2 Filed: 08/03/07 Page 28 of 61 PageID #:156

Rev10-24-00Final

replacement parts in our local parts warehouse inventory and/or the Otis Service Center, available for express delivery within 24 hours in case of emergencies.

## MAJOR COMPONENT INVENTORY

Otis will maintain a supply of genuine Otis major components available for emergency replacement in our warehouse inventory. This inventory includes, but is not limited to, generator rotating elements, motor-rotating elements, brake magnets, solid state components, selector tapes, and door operator motors. Major components will be in Otis' warehouse inventory or available from facilities located throughout North America. When practical parts will be shipped within 24 hours.

## OTIS SERVICE EQUIPMENT

Any counters, meters, tools, remote monitoring devices, or communication devices which Otis may use or install under this Contract remains Otis; property, solely for the use of Otis employees. Such service equipment is not considered a part of the Units. Owner will grant Otis the right to store or install such service equipment in your building and to electrically connect it to the Units. Owner will restrict access to the service equipment to authorized Otis personnel. Owner agrees to keep the software resident in the service equipment in confidence as a trade secret for Otis. Owner will not permit others to use, access, examine, copy, disclose or disassemble the service equipment or the software resident in the service equipment for any purpose whatsoever. If the service is terminated for any reason, Otis will be given access to your premises to remove the service equipment, including the resident software, at Otis' expense.

## QUALITY CONTROL

Otis will perform an annual survey of the Units to verify that the Units conform to Otis requirements. Otis will periodically conduct field audits of Otis' personnel to maintain quality standards. Otis field engineers will provide technical assistance, technical information, and code consultation to support our maintenance organization.

3.3    The Contractor Shall:

a.    Perform Maintenance Services (including emergency 24-hour callback service), as needed, Monday through Friday, during normal working hours, as well as all holidays that Neiman Marcus is open for business, other than Christmas, Thanksgiving, and Easter.

b.    The Contractor shall make every effort to perform Maintenance Services prior to store open hours. If any performance of Maintenance Service poses a threat to the safety of Neiman Marcus, its employees, agents, customers or invitees, Contractor shall provide a barricade around the area where Maintenance Services are to be performed. All work is scheduled for normal working hours of normal working days and services required beyond this time frame for either callbacks, maintenance or repair, except as noted herein will be billed based on the premium portion only.

In the event that emergency callbacks or repairs cannot be completed during normal working hours or are requested on weekends or on holidays, Neiman Marcus shall

Rev10-24-00Final

only be obligated to pay the premium portion of resulting overtime. Contractor shall not bill Neiman Marcus for the base portion of such overtime.

3.4    Contractor understands and agrees that its obligation to perform Maintenance Services is not subject to notice from Neiman Marcus of the need for Maintenance Services; however, should Neiman Marcus, from time to time, notify Contractor of the need for Emergency Callback Services, Contractor shall begin performing Maintenance Services at the Stores within two (2) hours after receiving notice from Neiman Marcus. Contractor shall complete all such Emergency Callback Services within twenty-four (24) hours after such notice thereof and Services will not be deemed to be completed until the Vertical Transportation Equipment functions in accordance with manufacturer's standards.

3.5    Contractor acknowledges because of Neiman Marcus' retail business that response time is important. Contractor shall maintain the original equipment standards; provided, however, that the standards shall be subject to and not cause equipment to exceed the requirements of any and all laws, ordinances, regulations and orders of any court or governmental authority relating to the performance of elevators.

Contractor shall maintain a comfortable elevator ride, consistent with the engineered design limitations, with smooth acceleration, retardation and a soft stop. Door operation shall be quiet and positive with smooth checking at the extremes of travel.

3.6    Contractor agrees to render Maintenance Services in a manner consistent with Neiman Marcus policies as in effect from time to time, and to observe all of Neiman Marcus rules and regulations. Without limiting the foregoing, Contractor shall comply with Neiman Marcus "no smoking" rule as it exists, which rule, as of the date hereof, prohibits smoking. Prior to acceptance, Contractor reserves the right to review, comment and, if necessary, modify any regulations that are in conflict with Company or Union Agreements.

Contractor shall designate a National Account Manager, as well as a local representative, and this representative shall handle all complaints of any kind arising out of the performance of this Agreement. Contractor's local representative shall meet quarterly with Operations Manager or Neiman Marcus' designated representative to discuss Contractor's performance under this Agreement. Neiman Marcus shall furnish Contractor with a copy of all policies, rules and regulations, which govern the conduct of Neiman Marcus employees.

3.7    Contractor acknowledges that it has had full access to the Neiman Marcus Facilities to ascertain all conditions and limitations of the Vertical Transportation Equipment and the Contractor warrants that all Maintenance Services will be rendered in a first class manner.

02/10/2005 ... ...

02/10/2005 ...

Rev10-24-00Final

3.8     Contractor agrees that;

      a.     It shall not violate and shall comply with all laws, ordinances, regulations and orders of governmental authorities or courts regulating the Vertical Transportation Equipment;

      b.     it shall procure and keep effective all licenses and permits required by any governmental authority for Contractor's operations; and

      c.     it shall pay all taxes, fees and assessments (and file all reports, returns and other required documents) which may be imposed by any governmental authority upon the equipment, supplies and other property of Contractor utilized in connection with Contractor's duties, the business of Contractor and the income or earnings of Contractor's business.

Contractors contract price for service is based upon laws, ordinances, and regulations current as of the date of this Agreement. In the event these requirements are modified in the future, Contractor must be compensated for any additional costs incurred. Any reduction in cost due to changes in laws, ordinances, or regulations shall be passed on to Neiman Marcus directly.

In the event that the Contractor is required by any governmental authority or the Neiman Marcus inspection service to run safety tests, prior notification shall be given to Neiman Marcus so that a representative of Neiman Marcus may witness said tests and Contractor shall send to Neiman Marcus two (2) copies of all written reports with respect to such tests which are filed by Contractor.

## SAFETY TESTS – TRACTION ELEVATORS

We will periodically examine safety devices and governors of the Units. We will conduct an annual no load test and perform at each fifth year a full load, full speed test of safety mechanisms, overspeed governors, and car and counterweight buffers. If required, the governor will be recalibrated and sealed for proper tripping speed, and elevator car balances will be checked.

## SAFETY TESTS – HYDRAULIC ELEVATORS

We will conduct an annual no load test and annual pressure relief valve test. If present code as of effective date of this agreement requires full load test, then provisions will be made to include this as part of this Agreement.

3.9     Contractor shall maintain 24 hour OTISLINE facility with sufficient personnel in its offices to receive telephone calls from Neiman Marcus seven (7) days a week, twenty-four (24) hours a day, including holidays.

Rev10-24-00Final

3.10    Prior to performing Maintenance Services and on completion of Maintenance Services, Contractor shall sign in at the Neiman Marcus Store security desk.

**REPORTS**

Otis will use the OMMS® program to plan and record completion of maintenance procedures. Otis will, at your request, provide you with a copy of Otis' standard customer OTISLINE® report of equipment improvements, repairs, tests and service calls for the Units, which were received by our OTISLINE® dispatching center.

## SECTION 4

## Compensation to Contractor

4.1    Neiman Marcus shall pay Otis Elevator Company for Maintenance Services performed at each Store covered under each Maintenance Schedule ("Standard Charge"). See Exhibit B for pricing matrix dated 8/1/00.

In addition to the Standard Charge, Neiman Marcus shall pay Contractor each month the amount (the "Additional Charges") calculated in accordance with the steps set forth below in which:

**PRICE ADJUSTMENT**

The Contract Price will be adjusted annually on the anniversary of the commencement of service to reflect increases or decreases in material and labor costs.

**A. Material**

The material portion of the original Contract Price will be increased or decreased by the percent of increase or decrease shown by the index of "Producer Commodity Prices for Metals and Metal Products" published by the U. S. Department of Labor, Bureau of Statistics.

**B. Labor**

The labor portion of the original Contract Price will be increased or decreased by the percent of increase or decrease in the straight time hourly labor cost for the price adjustment month compared with previous years straight time hourly labor cost. The phrase "straight time hourly labor cost" means the sum of the straight time hourly labor rate plus the hourly cost of fringe benefits paid to elevator examiners in the locality where the equipment is to be maintained.

*The above price adjustment provisions will incorporate the current material and labor indexes as are currently in effect as of 8/1/00. See pricing matrix (Exhibit B) for detail. The indices noted reflect the billing as of 8/1/00 and all adjustments will be made annually per the current monthly adjustment dates in effect for each store.*

Rev10-24-00Final

Maintenance Services ("Standard Charge") will be billed quarterly in advance for the services to be performed. Neiman Marcus will pay by the 45th day of each quarterly billing cycle. A 1% discount will be applied to the gross billing amount. Contractor will be reimbursed a sum of one and one-half percent (1.5%) per month, or the highest legally permitted rate, whichever is less, on any balance past due for more than thirty (30) days, together with all cost (including, but not limited to attorneys' fees) incurred by us to collect overdue amounts.

The Contractor will apply an additional 3% discount to the monthly maintenance invoice for as long as Neiman Marcus utilizes a single invoice covering all locations on a monthly basis.

All Additional Charges will be billed under separate invoices and submitted to Neiman Marcus Property Management for payment. Payment of the Standard Charge and the Additional Charges shall be due within thirty (30) days following the receipt date of invoice.

When requested by Neiman Marcus Property Management, Contractor shall perform services not covered by this Agreement and Neiman Marcus shall pay Contractor a fee in accordance with the agreement of the parties hereto. Any fee or charge shall be reasonable in relation to other amounts charged under this Agreement.

As consideration for being a Maintenance Customer, additional charges outside of the scope of this Agreement will receive a 10% discount.

4.3    Contractor further understands and agrees that should Neiman Marcus choose to close any Stores, to sell any of the Stores to a party not desiring to continue this Agreement, or to not utilize any particular Vertical Transportation Equipment, the Standard Charge shall be reduced accordingly.


## SECTION 5

### Employees

5.1    The parties hereto acknowledge that Neiman Marcus has an interest in maintaining standards for all persons working within its Stores with particular regard to appearance, behavior and demeanor. Contractor shall engage no employee to work in the Stores to whom Neiman Marcus shall object; provided said objection is reasonable and does not require Contractor to violate any laws, covenants or agreements (civil or otherwise). Contractor shall have the right to replace its designated management representative or to designate others to assist in or assume the duties of management representative upon immediate facsimile notification to Neiman Marcus.

5.2    Contractor is responsible for training and supervising its employees. Contractor shall designate its management representative in Exhibit A, and this management representative shall supervise its employee's work, formally inspect each of the Stores at least once each year, and manage all in-store personnel and administrative functions. Contractor shall have the right to replace its designated management representative or to designate others to assist in

Rev10-24-00Final

or assume the duties of management representative upon not less than thirty (30) days' prior notice to Neiman Marcus.

5.3     The wages, salaries, costs and benefits of all persons employed by Contractor shall be borne solely by Contractor. Neiman Marcus shall not be responsible for paying any Federal, State and Local taxes, including, but not limited to, social security, unemployment, withholding and other taxes of a similar nature, as may be required with respect to Contractor's employees. Under no circumstances shall Neiman Marcus be considered a co-employer of Contractor's employees.

All services provided by Contractor are understood to be provided by Contractor solely in its capacity as an independent contractor.

No partnership, agency or joint venture relationship shall be created by this Agreement.

Contractor and its employees, agents, sub-agents or representatives shall not be treated as employees with respect to any services performed hereunder for unemployment tax or wage and labor purposes.

Contractor's responsibility, as independent contractor, shall include, but not be limited to, liability and worker's compensation insurance, licenses, certificates, payroll, social security and unemployment taxes and withholding.

Contractor shall promptly pay all bills incurred in the performance of this Agreement and shall incur no expense or obligation in the name of Neiman Marcus.

## SECTION 6

## Financial Responsibility, Indemnification and Insurance

Contractor shall maintain at its own expense the following policies of insurance from reputable amounts required by law and sufficient to fully protect Contractor and Neiman from and against any and all claims, damages, losses, expenses, liens, causes of action, suits, demands, judgements and liabilities, and attorneys' fees

a.     Worker's Compensation and Employer's Liability Insurance.

b.     Commercial General Liability for Bodily Injury and Property Damage with limits per Otis' Standard Certificate. (Sample attached).

c.     Comprehensive Automobile Liability for Bodily Injury and Property Damage With limits of $2,000,000 per Otis' Standard Certificate (Sample attached). A separate certificate for Nevada Location will be provided.

Contractor shall provide evidence of the insurance coverage, represented by Certificates of Insurance issued by the insurance carrier which shall certify that such insurance is in full force and effect and

APR 18 2007 10:17 FR LIBERTY MUTUAL      847 619 2921 TO 13124221717      P.13
02/16/2005 Case: 1:07-cv-02250 Document #: 24-2 Filed: 08/03/07 Page 34 of 61 PageID #:162

Rev10-24-00Final)

that such policy(ies) may not be cancelled or materially modified without Neiman Marcus being given 30 days prior written notice of such proposed cancellation or modification.

Responsibility and Liability

Otis shall, if so directed by Neiman Marcus, cooperate in the defense of suits brought against Neiman Marcus based on accidents involving the equipment and/or service. Otis shall indemnify, and hold harmless Neiman Marcus, its affiliates and their respective directors, officers, employees, agents and representatives and their respective successors and assigns (the "Indemnified Parties"), from and against all liability, demands, claims, actions or causes of action, assessments, losses, fines, penalties, costs, damages and expenses for personal injury or property damage, including reasonable attorney's fees (collectively, "Damages") sustained or incurred by any of the Indemnified Parties as a result of or arising out of or relating to the work to be provided hereunder, or to the extent caused by Otis' acts or omissions, but not to the extent caused by others.

For purposes of this Section 6, "Claims" shall be defined as follows: "Claims" shall mean all proceedings asserting that an Indemnified Person is or may be liable for monetary or other obligations which may constitute or result in Damages, or injunctive or other equitable relief, in each case for which such Indemnified Person may be entitled to indemnification pursuant to this Section 6.

All Claims shall be made in writing and shall set forth with reasonable specificity the facts and circumstances of the Claim, as well as the basis upon which indemnification pursuant to this Section 6 is sought. Notwithstanding the foregoing, no delay or failure by any Indemnified Person to provide notification of any Claim shall preclude any Indemnified Person from recovering for Damages pursuant to this Section 6; except to the extent that such delay or failure materially adversely affects the rights of Otis. By the foregoing, Otis does not waive any rights, defenses or remedies at law.

## SECTION 7

## Termination and Cancellation

7.1     If, in the opinion of Neiman Marcus, Contractor is not complying with the terms of this Agreement, Neiman Marcus shall submit a detailed written report to the National account representative of the Contractor, outlining the specific items of noncompliance. A period of thirty (30) days shall be allowed for Contractor to correct the corresponding defects.

In the event Contractor fails to satisfactorily correct the noted defects within the allotted time, or if defects and service problems recur, Neiman Marcus shall have the right to terminate any affected Maintenance Schedules by giving Contractor thirty (30) days' notice.

7.2     In the event that Neiman Marcus or Contractor shall become a party, directly or indirectly, to any labor dispute; or in the event that any of Neiman Marcus' premises shall be picketed of threatened to be picketed by any labor organization or group for any reason whatsoever relating to Contractor or the conduct of Contractor's business, either on Neiman Marcus' premises or elsewhere, then in any such case, Neiman Marcus, at its election, forthwith may

APR 18 2007 10:17 FR LIBERTY MUTUAL     847 619 2921 TO 13124221717     P.14
02/16/2005 16:34 FAX 847 ... ...
Case: 1:07-cv-02250 Document #: 24-2 Filed: 08/03/07 Page 35 of 61 PageID #:163

Rev10-24-00Final

terminate any affected Maintenance Schedules of this Agreement immediately by giving to Contractor notice of such termination, or may suspend the Contractor's services for so long as the dispute continues.

7.3    Except as otherwise provided in this Section, in no event shall Neiman Marcus be deemed in default in the performance of any of its obligations under this Agreement or any affected Maintenance Schedule unless and until Neiman Marcus shall have failed to perform such obligations within thirty (30) days, or within such greater time as is reasonable required, and mutually agreed upon, after notice by Contractor to specifying wherein Neiman Marcus has failed to perform any such obligation.

If Neiman Marcus shall be in default in the performance of its obligations under this Agreement, then Contractor may terminate this Agreement upon thirty (30) days' notice to Neiman Marcus.

7.4    Upon any termination of this Agreement, Contractor shall remove from the premises of Neiman Marcus all equipment, supplies and other property then belonging to Contractor, repairing any and all damage to the premises and other property of Neiman Marcus caused by such removal, and in the event of failure on the part of Contractor to do so within thirty (30) days after such termination, all such equipment, supplies and other property which shall not have been so removed shall be deemed to have been abandoned by Contractor and shall become the property of Neiman Marcus.

7.5    Neiman Marcus shall have the right in its sole and absolute discretion to close, sell, consolidate or otherwise dispose of, any or all of the Neiman Marcus Facilities or buildings under any Maintenance Schedule, without any liability whatsoever to Contractor.

In such event, this Agreement may be terminated at Neiman Marcus' option as to the affected Neiman Marcus Facilities or buildings upon such disposition, but shall continue in full force and effect for the remaining Stores, if any, and the compensation paid to Contractor shall be reduced accordingly.

In the event that a Neiman Marcus facility or piece(s) of equipment are to be removed from coverage under the Master Maintenance Agreement, both parties shall utilize Exhibit A to effect this change.

Not withstanding the foregoing, if Neiman Marcus shall dispose of any of its buildings covered by any Maintenance Schedule then, at Neiman Marcus' sole discretion, Neiman Marcus may assign its rights under any such affected Maintenance Schedule to the successor in interest under such Maintenance Schedules, and those Schedules shall not terminate.

Case: 1:07-cv-02250 Document #: 24-2 Filed: 08/03/07 Page 36 of 61 PageID #:164

Rev10-24-00Final

# SECTION 8

## Remedies

8.1    If Contractor shall default in the performance of any of its obligations under the terms of this Agreement or any Maintenance Schedules executed hereunder, then, in addition to the exercise of all rights and remedies provided for herein, including without limitation, Section 7.1, or at law or in equity, Neiman Marcus shall have the right, but not the obligation, to suspend the obligations of the said Contractor, and perform or cause to be performed such obligations of Contractor without further obligation of payment to the Contractor until the default is cured or the contract is terminated.

# SECTION 9

## Notices

All notices, consents, approvals, or requests required or permitted to be given shall be in writing, except for notice of under Section 3.4 of this Agreement which may be made by telephone, and Section 5.1 which shall be given by facsimile, and shall be deemed to have been given to Contractor or to Neiman Marcus, as the case may be, or upon being personally delivered or upon being deposited in the United States registered or certified mail, postage prepaid, addressed to the Vice President - Sales and Marketing of Contractor at Farmington, Connecticut or the Neiman Marcus Property Management Department, as the case may be, or to such other person or such other address or addresses as Neiman Marcus or Contractor may from time to time respectively designate by notice in writing, as specified above.

# SECTION 10

## Miscellaneous

10.1 .    The performance of any obligation by either Neiman Marcus or Contractor shall be excused during any periods when either of the parties is unable to perform hereunder by reason of acts of God, public enemy, fire, flood or any similar or dissimilar case (other than lack of funds) beyond the control of Neiman Marcus or Contractor, as the case may be. In the event that Contractor is unable to perform the obligations of the agreement for a period of more than 45

days, then Neiman Marcus shall be entitled to immediately terminate the agreement with written notice without prejudice.

10.2     Contractor recognizes that this Agreement is a personal services contract; and therefore, agrees that it shall have no right to assign its rights or delegate any of its duties hereunder, whether by express conveyance or transfer, operation of law or otherwise, without the prior consent of Neiman Marcus.

Any assignment or delegation without the prior consent of Neiman Marcus shall be null and void and of no force and effect whatsoever and Contractor shall remain fully liable for the performance of all terms, convenants and provisions of this Agreement.

Neiman Marcus shall not assign this Agreement without the prior consent of the Contractor, and such consent is not to be unreasonably withheld except that any assignment to an affiliate of Neiman Marcus shall not require Contractor's consent.

10.3     The provisions of this Agreement constitute the entire agreement of the parties hereto, no terms, conditions, warranties, promises, or understandings of any nature whatsoever, expressed or implied, exist between the parties except as herein expressly set forth.

10.4     No waiver of any default hereunder shall be implied from any omission by either party to take any action on account of such default if such default persists or is repeated, or by the acceptance of any benefits under this Agreement, and no waiver shall affect any default other than the default specified in the waiver and then only for the time and to the extent therein stated. To be effective, any waiver must be in writing.

10.5     It is the express intent of Contractor and Neiman Marcus that Contractor shall perform under this Agreement as an independent contractor, and nothing in this Agreement shall be construed as creating any relation of principal and agent, partnership or joint venture or landlord and tenant between the parties; nor shall Contractor be deemed to have any other relationship to Neiman Marcus other than independent contractor.

10.6     This Agreement shall be deemed to have been made, executed, and shall be construed according to the laws of the State of Texas, except that in the event of controversy affecting an individual Maintenance Schedule, the laws of the state in which the Maintenance Schedule is to be performed will apply.

10.7     If any provision of this Agreement shall, to any extent, be invalid or unenforceable, the remainder of this Agreement (or the application of such provisions to persons or circumstances other than those in respect of which it is invalid or unenforceable) shall not be affected thereby, and each provision of this Agreement, unless otherwise specifically conditioned upon such invalid or enforceable provision shall be valid and enforceable to the fullest extent permitted by law.

Rev10-24-00Final

10.8  The Section headings in this Agreement are for convenience and reference only and shall not be construed or held in any way to explain, modify, amplify or add to the interpretation, construction or meaning of the provisions of this Vertical Transportation Service Agreement.

10.9  Otis shall not be liable for any special, indirect or consequential damages of any kind including, but not limited to, loss of profits, loss of good will, loss of business opportunity, additional financing costs, or loss of use of any equipment or property, whether in contract, tort, including negligence, warranty or otherwise, notwithstanding any indemnity provision to the contrary.

IN WITNESS WHEREOF, the parties have executed this Master Vertical Transportation Service Agreement as of the day and year first above written.

OTIS ELEVATOR COMPANY

By: _____

Name: Octavia G. Matthews

Title: Director, Marketing & Product Strategy

Date: 11/17/2000

THE NEIMAN MARCUS GROUP, INC. d/b/a NEIMAN MARCUS

By: _____

Name: Gerald Sampson

Title: President / Chief Operating Officer

Date: 10-24-00

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

LAURA DiCHRISTOFANO,                )
                                    )
      Plaintiff,                    )
                                    )
v.                                  )    No.  2006 L 009971
                                    )
THE NEIMAN-MARCUS GROUP, INC.,)
OTIS ELEVATOR COMPANY, and          )
UNITED TECHNOLOGIES                 )
COPORATION,                         )
                                    )
      Defendant.                    )

## THE NEIMAN-MARCUS GROUP, INC.'S
## ANSWER TO PLAINTIFF'S COMPLAINT AT LAW AND AFFIRMATIVE DEFENSES

NOW COMES Defendant, THE NEIMAN-MARCUS GROUP, INC. ("NEIMAN-MARCUS"), by and through its attorneys, BELGRADE AND O'DONNELL, P.C., and for its Answer to Plaintiff's Complaint at Law, states as follows:

### COUNT I
### NEGLIGENCE – THE NEIMAN-MARCUS GROUP, INC.

1.   NEIMAN-MARCUS lacks sufficient information to either admit or deny the allegations contained in Paragraph 1 and therefore, neither admits nor denies the same but demands strict proof thereof.

2.   NEIMAN-MARCUS admits the allegations of Paragraph 2.

3.   NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of


EXHIBIT
C

Illinois. NEIMAN-MARCUS denies all other allegations of Paragraph 3, insofar as they have been not been admitted.

4. NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois. NEIMAN-MARCUS denies all other allegations of Paragraph 4, insofar as they have been not been admitted.

5. NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois. NEIMAN-MARCUS denies all other allegations of Paragraph 5, insofar as they have been not been admitted. 6.

6. NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois. NEIMAN-MARCUS denies all other allegations of Paragraph 6, insofar as they have been not been admitted.

7. NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois. NEIMAN-MARCUS denies all other allegations of Paragraph 7, insofar as they have been not been admitted.

8. NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center

Mall, in the City of Oakbrook, County of DuPage, State of Illinois. NEIMAN-MARCUS denies all other allegations of Paragraph 8, insofar as they have been not been admitted.

9. NEIMAN-MARCUS admits only that at all relevant times there were escalators for use by its customers at the store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois. Answering further, NEIMAN-MARCUS denies the rest and remaining allegations of Paragraph 9 insofar as they have been not been admitted.

10. NEIMAN-MARCUS admits only that at all relevant times it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois and that there were escalators for use by its customers at the store. Answering further, NEIMAN-MARCUS denies the rest and remaining allegations of Paragraph 10 insofar as they have been not been admitted.

11. NEIMAN-MARCUS admits only that at all relevant times it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois and that there were escalators for use by its customers at the store. Answering further, NEIMAN-MARCUS denies the rest and remaining allegations of Paragraph 11 insofar as they have been not been admitted.

3

12.  NEIMAN-MARCUS admits only that at all relevant times it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois and that there were escalators for use by its customers at the store.  Answering further, NEIMAN-MARCUS denies the rest and remaining allegations of Paragraph 12 insofar as they have been not been admitted.

13.  NEIMAN-MARCUS lacks sufficient information to either admit or deny the allegations contained in Paragraph 13 and therefore, neither admits nor denies the same but demands strict proof thereof.  In the alternative, the allegations of Paragraph 13 are denied.

14.  NEIMAN-MARCUS lacks sufficient information to either admit or deny the allegations contained in Paragraph 14 and therefore, neither admits nor denies the same but demands strict proof thereof.  In the alternative, the allegations of Paragraph 14 are denied.

15.  NEIMAN-MARCUS admits only that on November 17, 2004, its customers could use the escalators to access different floors of the premises.  Answering further, NEIMAN-MARCUS denies the rest and remaining allegations of Paragraph 15 insofar as they have been not been admitted.

16.  NEIMAN-MARCUS denies the allegations contained in Paragraph 16.

17.    NEIMAN-MARCUS denies the allegations contained in Paragraph 17.

18.    NEIMAN-MARCUS admits only that, to the extent that any duty was imposed by law, said duty was not breached and was not otherwise violated by NEIMAN-MARCUS.   Answering further, NEIMAN-MARCUS denies the rest and remaining allegations of Paragraph 18 insofar as they have not been admitted.

19.    NEIMAN-MARCUS denies the allegations contained in Paragraph 19, including, but not limited to, subparagraphs (a) through (f), inclusive.

20.    NEIMAN-MARCUS denies the allegations contained in Paragraph 20.

21.    NEIMAN-MARCUS denies the allegations contained in Paragraph 21.

**WHEREFORE**, Defendant, THE NEIMAN-MARCUS GROUP, INC., denies that Plaintiff, LAURA DiCHRISTOFANO, is entitled to judgment in any amount whatsoever, and further prays that this court dismiss Plaintiff's Complaint at Law with prejudice and award Defendant, NEIMAN-MARCUS GROUP, INC., its costs and all other relief as deemed just and equitable.

## COUNT II
## NEGLIGENCE – COMMON CARRIER – THE NEIMAN-MARCUS GROUP, INC.

1.  NEIMAN-MARCUS lacks sufficient information to either admit or deny the allegations contained in Paragraph 1 and therefore, neither admits nor denies the same but demands strict proof thereof.

2.  NEIMAN-MARCUS admits the allegations of Paragraph 2.

3.  NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois.  NEIMAN-MARCUS denies all other allegations of Paragraph 3, insofar as they have been not been admitted.

4.  NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois.  NEIMAN-MARCUS denies all other allegations of Paragraph 4, insofar as they have been not been admitted.

5.  NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois.  NEIMAN-MARCUS denies all other allegations of Paragraph 5, insofar as they have been not been admitted.   6.

6.  NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center

Mall, in the City of Oakbrook, County of DuPage, State of Illinois. NEIMAN-MARCUS denies all other allegations of Paragraph 6, insofar as they have been not been admitted.

7. NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois. NEIMAN-MARCUS denies all other allegations of Paragraph 7, insofar as they have been not been admitted.

8. NEIMAN-MARCUS admits only that on November 17, 2004, it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois. NEIMAN-MARCUS denies all other allegations of Paragraph 8, insofar as they have been not been admitted.

9. NEIMAN-MARCUS admits only that at all relevant times there were escalators for use by its customers at the store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois. Answering further, NEIMAN-MARCUS denies the rest and remaining allegations of Paragraph 9 insofar as they have been not been admitted.

10. NEIMAN-MARCUS admits only that at all relevant times it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois and that there were escalators for use by its customers at the store. Answering further, NEIMAN-MARCUS denies the rest

and remaining allegations of Paragraph 10 insofar as they have been not been admitted.

11. NEIMAN-MARCUS admits only that at all relevant times it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois and that there were escalators for use by its customers at the store. Answering further, NEIMAN-MARCUS denies the rest and remaining allegations of Paragraph 11 insofar as they have been not been admitted.

12. NEIMAN-MARCUS admits only that at all relevant times it operated the NEIMAN-MARCUS store located at 6 Oakbrook Center Mall, in the City of Oakbrook, County of DuPage, State of Illinois and that there were escalators for use by its customers at the store. Answering further, NEIMAN-MARCUS denies the rest and remaining allegations of Paragraph 12 insofar as they have been not been admitted.

13. NEIMAN-MARCUS denies the allegations of Paragraph 13.

14. NEIMAN-MARCUS denies the allegations of Paragraph 14.

15. NEIMAN-MARCUS denies the allegations of Paragraph 15, including, but not limited to, subparagraphs (a) through (f), inclusive.

16. NEIMAN-MARCUS denies the allegations of Paragraph 16.

17. NEIMAN-MARCUS denies the allegations of Paragraph 17.

**WHEREFORE**, Defendant, THE NEIMAN-MARCUS GROUP, INC., denies that Plaintiff, LAURA DiCHRISTOFANO, is entitled to judgment in any amount whatsoever, and further prays that this court dismiss Plaintiff's Complaint at Law with prejudice and award Defendant, NEIMAN-MARCUS GROUP, INC., its costs and all other relief as deemed just and equitable.

## COUNT III – NEGLIGENCE – UNITED TECHNOLOGIES CORPORATION

The allegations contained in Count III of Plaintiff's Complaint at Law are not directed at or against NEIMAN-MARCUS and therefore, require no answer. In the alternative and to the extent that any of the allegations contained in Count III could be construed as being addressed at or against NEIMAN-MARCUS, NEIMAN-MARCUS denies each and every allegation directed at or against it.

## COUNT III [sic] – NEGLIGENCE – OTIS ELEVATOR COMPANY

The allegations contained in the second Count III [sic] of Plaintiff's Complaint at Law are not directed at or against NEIMAN-MARCUS and therefore, require no answer. In the alternative and to the extent that any of the allegations contained in Count III [sic] could be construed as being addressed at or against NEIMAN-MARCUS, NEIMAN-MARCUS denies each and every allegation directed at or against it.

9

## AFFIRMATIVE DEFENSE

Without prejudice to its denials, and any and all other statements made in the Answer, Defendant, THE NEIMAN-MARCUS GROUP, INC. ("NEIMAN-MARCUS"), states as its separate and its complete defense to Plaintiff's Complaint at Law, as follows:

### First Affirmative Defense

1.   It was the duty of Plaintiff, LAURA DiCHRISTOFANO ("DiCHRISTOFANO"), before and at the time of the occurrence alleged in her Complaint at Law, to exercise due care and caution for her own safety and in a matter so as not to injure or cause injury or damages to herself.

2.   Notwithstanding said duty, and in breach thereof, DiCHRISTOFANO was guilty of one or more of the following acts or omissions of negligence, misconduct or fault:

   a.   Failed to observe a condition that was open and obvious to all;

   b.   Failed to exercise due care to avoid the condition of which she now complains; and

   c.   Failed to exercise due care and caution for her own safety; and

   d.   Was otherwise careless and negligent in causing her own injuries.

3.   The aforementioned negligence, misconduct and/or fault of DiCHRISTOFANO contributed in whole or in part, to proximately cause the alleged injuries and damages for which she seeks recovery.

4.  As a result of the negligence, misconduct and/or fault of DiCHRISTOFANO, she is precluded from any recovery from Defendant, NEIMAN-MARCUS, or in the alternative, any damages awarded to DiCHRISTOFANO, shall be diminished in proportion to the amount of negligence, misconduct and/or fault attributable to DiCHRISTOFANO.

## Second Affirmative Defense

If NEIMAN-MARCUS is found to be liable (said liability being expressly denied), NEIMAN-MARCUS is only severally liable for any damages, other than medical and medically related expenses, to the extent that any alleged fault on the part of NEIMAN-MARCUS is less than twenty-five percent (25%) of the total fault attributable to all other persons and/or entities also at fault, pursuant to 735 ILCS § 5/2-1117.

## Third Affirmative Defense

The allegations contained in Count Two of Plaintiff LAURA DiCHRISTOFANO'S Complaint at Law are insufficient in fact and insufficient in law to state a claim upon which relief can be granted, including but not limited to the fact that NEIMAN-MARCUS was not a "common carrier" and no proper cause of action can be asserted against NEIMAN-MARCUS as a "common carrier" due to escalators being present and used in its store.

**WHEREFORE**, Defendant, THE NEIMAN-MARCUS GROUP, INC., denies that Plaintiff, LAURA DiCHRISTOFANO, is entitled to judgment in

any amount whatsoever, and further prays that this Court dismiss

Plaintiff's Complaint at law with prejudice and award Defendant

THE NEIMAN-MARCUS GROUP, INC., its costs and all other relief as

deemed just and equitable.

                              **NEIMAN-MARCUS GROUP, INC.,**

                              By: _____
                                  One of Its Attorneys


George M. Velcich
James Saranteas
Ryan L. Eddings
**BELGRADE AND O'DONNELL, P.C.**
20 North Wacker Drive
Suite 1900
Chicago, Illinois 60606
(312) 422-1700
Firm I.D. 31423

12

Otis Elevator Company
NORTH & SOUTH AMERICA
One Farm Springs
Farmington, CT 06032-2500



**UNITED
TECHNOLOGIES
OTIS ELEVATOR**

April 15, 2005

National Liability Field Claims MS
Liberty Mutual Fire Insurance Company
P.O. Box 967900
Schaumburg, IL 60196
Attn.: Nataliya Uster

Re:         P 413-090726-01
Claim #:    YLN TBD
Account:    Otis Elevator Company
Otis Claim #: OTS 034180
Claimant:   Laura Di Christofano
Loss Date:  11/12/04

Dear Ms. Uster,

Please allow this letter to serve as an acknowledgment of your correspondence dated
April 8, 2005 in regards to the above captioned matter.

Otis Elevator Company has established a file in connection with this matter, and is in the
process of conducting an investigation. As this case is currently under review, Otis is not
in a position to address your tender request at this time.

Please contact me at your earliest convenience so that we may discuss this matter further.

Sincerely,

Lyssette Ciardiello
Claims Department Manager
(860) 676-5064



EXHIBIT

D

Otis Elevator Company
One Farm Springs Road
Farmington, Connecticut 06032


**Otis**
A United Technologies Company

July 29, 2005

Liberty Mutual
P.O Box 967900
Schaumburg, IL 60196
Attn: Nataliya Uster

RE:     Claimant:     Laura Di Christofano
        D/L:          11/12/04
        Your File:    P 413-090726-01

Dear Nataliya Uster:

Please allow this letter to serve as a response to your correspondence.

Our obligation is to pay only those claims for damages when it appears Otis was legally responsible. In considering this responsibility, Otis must be guided by all the information available to us in the course of our investigation.

Upon review of the contract there was no language with respect to defense and indemnification. As such Otis will not assume the handling of this matter and must respectfully deny your tender.

If you have any additional information you would like Otis to consider in connection with this matter, please forward same to my attention.

Sincerely,

Cherice Colebrook
860-676-5527



EXHIBIT
E

NATIONAL LIABILITY FIELD CLAIMS MS
LIBERTY MUTUAL FIRE INSURANCE COMPANY
PO BOX 967900
SCHAUMBURG IL 60196



Telephone:   (800) 835-6279
Fax:         (603) 334-8080

August 23, 2005

CHERICE COLEBROOK
OTIS ELEVATOR COMPANY
1 FARM SPRINGS RD
FARMINGTON CT 06032-2572

Claimant:      Laura Di CHristofano
Claim Number:  P 413-090726-01
Customer:      Neiman Marcus Group
Date of Loss:  11/12/2004

Dear Ms. Colebrook::

This is in response to your July 29, 2005 letter denying my tender of Neiman Marcus' defense and indemnity for the above accident.

Your letter states that your obligation is to only pay those claims for damages when it appears Otis was legally responsible. We are not asking you to pay any damages or to accept liability. We are asking you to defend and indemnify Neiman Marcus for a loss that the claimant alleges occurred on an Otis escalator which you maintain.

Your statement that there is no language with respect to defense and indemnification in the contract is inaccurate. In my letter I specifically quoted the language on Page 11 which states "Otis shall indemnify, and hold harmless Neiman Marcus from and against all liability, demands, claims... arising out of or relating to the work to be provided hereunder." This clearly states that if an accident arises out of the escalator, Otis will defend and indemnify Neiman Marcus.

Based on the above, we will continue to look to Otis Elevator and their carrier, Hartford Fire Insurance Company to handle this matter on behalf of Neiman Marcus. Please respond to this letter within the next 30 days. Again, I am requesting you provide a copy of the policy Otis Elevator has with The Hartford Fire Insurance policy covering the date of this loss.

Sincerely,

ROSEANNE RUBENSTEIN
SR TECHNICAL CLAIMS SPECIALIST

EXHIBIT
F

NATIONAL LIABILITY FIELD CLAIMS MS
LIBERTY MUTUAL FIRE INSURANCE COMPANY
PO BOX 967900
SCHAUMBURG IL 60196

**Liberty Mutual.**

Telephone:     (800) 835-6279
Fax:               (603) 334-8080

March 23, 2006

CHERICE COLEBROOK
OTIS ELEVATOR COMPANY
1 FARM SPRINGS RD
FARMINGTON CT 06032-2572

Claimant:       Laura DiChristofano
Claim Number:  P 413-090726-01
Customer:       Neiman-Marcus Group
Date of Loss:   11/12/2004

Dear Ms. Colebrook::

This is in follow-up to my August 23, 2005 letter, copy attached.

I am also attaching correspondence recently received from Matthew Willens, attorney representing Laura DiChristofano. As you know, this incident arose when Ms. DiChristafano was on the escalator at the Neiman Marcus store in Oak Brook, Illinois. We tendered this matter to you based on the terms of the contract between Neiman Marcus and Otis Elevator.

We are asking that you accept our tender and handle this matter to its conclusion. Please respond to this letter within the next 30 days and advise how you will proceed.

Sincerely,

ROSEANNE RUBENSTEIN
SR TECHNICAL CLAIMS SPECIALIST



EXHIBIT
6

Correspondence Copy #     767084280                    PC0014.00                    Page   1

P4B-090726-01

Date: Friday, June 30, 2006    Time: 04:23:06 PM Eastern Time Zone

# Fax

 **Otis**
A United Technologies Company
One Farm Springs Road
Farmington, CT 06032

| TO: | | FROM: | |
|---|---|---|---|
| Rose Rubenstein Liberty Mutual | | Name: Colebrook, Cherice M | |
| | | Dept.:        NHQ,Product Liability | |
| Fax No.:    847-517-1753 | | Fax No.:    +1 860-998-3713 | |
| Total Pages:        2<br>(Including Cover Page) | | Phone No.: +1 860-676-5527 | |
| Subject:   Laura DiChristotano D/L:11/12/04 | | | |

If there is a problem with this transmission, please contact the sender at the above phone number immediately. Notice: The information contained in this facsimile is confidential to United Technologies Corporation and is intended only for the use of the named addressee. If you are not the named addressee, or an employee/agent of the addressee, please be advised that the disclosure, copying, distribution and/or use of the information in this document is prohibited. Please contact the sender by telephone and United Technologies will arrange to retrieve the document at no expense to you. Thank you for your cooperation.

EXHIBIT
H

Rose Rubenstein:

Please be advised Otis Elevator will adhere and comply with the terms and conditions of the contract in place at the time of loss.

Cherice Colebrook
Otis Elevator Company
Claims Administrator
Law Department
One Farm Springs Road
Farmington, Connecticut 06032-2568
(860) 676-5527
(860) 998-3713 (fax)

The information contained in this email is confidential information of United Technologies Corporation, Otis Elevator Company and/or its legal counsel and is intended only for the use of named addressee. If you are not the named addressee or his or her employee/agent, be advised that disclosure, copying, distribution, and/or use of the telephone number given above. Otis Elevator Company will arrange to retrieve the documents at no expense to you. Thank you for your cooperation.

```
**  JOB STATUS REPORT  *:              AS OF  DEC 15 2   : 14:16     PAGE. 01
                                                    LIBERTY MUTUAL

     JOB #672

        DATE  TIME        TO/FROM        MODE  MIN/SEC    PGS   STATUS
001   12/15  14:15        18609983713    EC--S  00'47"    003    OK
```



**Liberty Mutual.™**

1000 Plaza Drive, Suite 600
P.O. Box 968001
Schaumburg, IL 60196-8001
Phone: (847) 413-9090
Fax:   (603) 334-8081

# FAX COVER SHEET

**DATE:**      12/15/06

**TO:**        Cherice Colebrook
               Otis Elevator

**FROM:**      SCHAUMBURG, IL (0413)
               NATIONAL LIABILITY CLAIMS
               John Simon

**SUBJECT:**   Laura Di Christofano claim
               DOL: 11/12/04
               File: P 413-090726-01

Cherice
I am trying to determine if Otis or United Technologies has been served with the lawsuit yet. I am attaching the information that we have research concerning a lawsuit being filed and a court date pending for 1/17/07

Also, I note in your June 30, 2006 correspondence that Otis Elevator will adhere and comply with the terms and conditions of the contract that was in place at the time of the loss. Can you clarify that position for me and please advise if Otis will defend and indemnify Neiman Marcus in this matter.

I can be reached at 800-835-6279 ext. 2535 or email john.simon@libertymutual.com



NUMBER OF PAGES TO FOLLOW:

LAW OFFICES

# BELGRADE AND O'DONNELL

A PROFESSIONAL CORPORATION

STEVEN B. BELGRADE*
JOHN A. O'DONNELL*
GEORGE M. VELCICH
PATRICK J. CULLINAN*
JOHN C. COYNE**
JAMES SARANTEAS
ROSS M. KUCERA
ASHLEY C. ESBROOK
RYAN L. EDDINGS

* ALSO ADMITTED IN INDIANA
** ALSO ADMITTED IN OHIO

SUITE 1900
CIVIC OPERA BUILDING
20 NORTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

(312) 422-1700
FAX (312) 422-1717

April 18, 2007


Mr. Steven P. Rouse
**Menges and Molzahn**
20 N. Clark Street
Suite 2300
Chicago, Illinois  60602-5002

     Re:  **Laura DiChristofano v. Neiman Marcus, et al.**
          **Our File No. 265138**

Dear Mr. Rouse:

    As you know, this matter involves the claims of Laura DiChristofano who alleges that she was injured on November 17, 2004, while using an escalator in the Neiman Marcus location at 6 Oakbrook Center Mall, in Oakbrook, Illinois.  As a result of this incident, DiChristofano has filed suit against Neiman Marcus, Otis Elevator, and United Technologies Corp.

    Neiman Marcus first tendered the defense of this litigation to Otis Elevator on April 8, 2005.  In response to this tender, Otis stated that its "obligation is to pay only those claims for damages when it appears Otis was legally responsible."  Otis then went on to state that "there was no language with respect to defense and indemnification" in the Master Vertical Transportation Service Agreement between Neiman Marcus and Otis. I have enclosed a copy of this contract for your convenience.

    With the above in mind, I direct your attention to Section 6 of the contract, wherein it is stated, in part:

          Contractor [Otis Elevator] shall maintain at its own expense the following policies of insurance from reputable amounts required by



BELGRADE AND O'DONNELL

Mr. Steven P. Rouse
April 18, 2007
Page 2

> law and sufficient to protect Contractor and
> Neiman [Marcus] from and against any and all
> claims, damages, losses, expenses, causes of
> action, suits, demands, judgments and
> liabilities, and attorneys' fees
>
> b. Commercial General Liability for Bodily
> Injury and Property Damage with limits per
> Otis' Standard Certificate.

In addition, please note Section 6, specifically the
paragraph following the "Responsibility and Liability" heading.
This section states, in part:

> Otis shall, if so directed by Neiman Marcus,
> cooperate in the defense of suits brought
> against Neiman Marcus based on accidents
> involving the equipment and/or service. Otis
> shall indemnify, and hold harmless Neiman
> Marcus, its affiliates and their respective
> directors, officers, employees, agents and
> representatives and their respective
> successors and assigns (the "Indemnified
> parties"), from and against all liability,
> demands, claims, actions or causes of
> actions, assessments, losses, fines,
> penalties, costs, damages and expenses for
> personal injury or property damage, including
> reasonable attorney's fees (collectively,
> "Damages") sustained or incurred by any of
> the Indemnified Parties as a result of or
> arising out of or relating to the work to be
> provided hereunder, or to the extent caused
> by Otis' acts or omissions, but not to the
> extent caused by others.

Accordingly, Otis is obligated under this contract to name
Neiman Marcus as an additional insured on its insurance
policies. Moreover, it is also obligated under this contract to
indemnify Neiman Marcus for all claims arising out of Otis'
maintenance of the escalators at the Neiman Marcus location in
Oakbrook, Illinois.

BELGRADE AND O'DONNELL

Mr. Steven P. Rouse
April 18, 2007
Page 3

As you know, DiChristofano filed a Complaint sounding in negligence against Neiman Marcus, Otis Elevator, and United Technologies. In her Complaint, DiChristofano alleges that while riding an escalator in the aforementioned Neiman Marcus location, it suddenly stopped and jerked throwing Plaintiff forward onto the escalator, resulting in physical injuries. Clearly, the allegations of the Complaint are directed at, and implicate faults in, the mechanical equipment and maintenance services provided by Otis pursuant to the Master Vertical Transportation Service Agreement. As such, Otis is obligated under the Master Vertical Transportation Service Agreement to accept our tender request. Accordingly, we hereby request that Otis Elevator accept out tender of defense of the lawsuit brought by DiChristofano.

In light of the history of this matter, and considering its current status in litigation, we ask that you respond to our tender request in writing. In the meantime, should you have any questions or concerns, please do not hesitate to contact our office.

Very truly yours,

John A. O'Donnell

JAO/kla

# MENGES & MOLZAHN, LLC

ATTORNEYS AT LAW

LYNDON C. MOLZAHN
RANDALL G. TALAN
PERRY C. ROCCO*
TIMOTHY J. REED*
STEVEN P. ROUSE

*ALSO ADMITTED IN INDIANA

CHARLES P. MENGES OF COUNSEL

20 NORTH CLARK STREET
SUITE 2300
CHICAGO, ILLINOIS 60602-5002
(312) 917-1880
FAX: (312) 917-1851
WWW.MENGES.COM
WRITER'S INTERNET ADDRESS:
PCR@MENGES.COM

LINDA C. ABENS
CHRISTINE A. BEDARD
ADAM M. BERGER
JAMES J. CHANDLER
BRETT A. CLANCY*
MICHAEL R. CURRY
GREGORY F. KELLY
PAUL B. PORVAZNIK
STEPHEN R. VEDOVA

WRITER'S DIRECT DIAL NO.

(312) 553-8648

IN REPLY REFER TO FILE NO.

55225-6-69

June 4, 2007

John A. O'Donnell
Belgrade & O'Donnell, PC
20 North Wacker, Suite 1900
Chicago, IL 60606

> Re:     *Laura DiChristofano v. Otis Elevator Company, Neiman Marcus Group, Inc. and United Technologies Corp.*
> Court No:    *07 C 2250*
> D/A:    *November 17, 2004*

Dear Mr. O'Donnell:

   Please be advised that the Otis Elevator Company does not agree with your interpretation of the elevator maintenance contract language concerning the obligation to name your client as an additional insured or the requirement that Otis indemnity your client for the plaintiff's accident. The Otis Elevator Company will not be accepting Neiman Marcus' tender of defense.

   Very truly yours,

   Perry C. Rocco

PCR/jlj

Doc:326762_1

