# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Laura DiChristofano, | ) |
|                 Plaintiff, | ) |
| v. | ) Case No. 07 C 2250 |
| | ) Judge Virginia M. Kendall |
| The Neiman Marcus Group, Inc. | ) |
| Otis Elevator Company; United | ) |
| Technologies Corporation, | ) |
|                 Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Laura DiChristofano ("DiChristofano") brought a personal injury action in Illinois state court alleging negligence on the part of Defendants The Neiman Marcus Group, Inc. ("Neiman Marcus"), Otis Elevator Company ("Otis"), and United Technologies Corporation ("UTC"). The case was removed to this Court on diversity grounds. Neiman Marcus brought a two-count cross-claim against Otis and UTC for contribution and breach of contract. Otis and UTC move to dismiss Count II of Neiman Marcus's cross-claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For reasons stated herein, Defendants' Motion to Dismiss Count II of Neiman Marcus's Cross-claim is granted as to UTC and is therefore dismissed with prejudice and is denied as to Otis.

### Neiman Marcus's Allegations

At the motion to dismiss stage, all of the cross-plaintiff's allegations are accepted as true. DiChristifano sued Neiman Marcus for injuries she sustained while riding on an escalator at a one of its retail stores in Oak Brook, Illinois. The escalator stopped and jerked, causing DiChristofano to fall. Pl. Compl. Count II, ¶ 16. Neiman Marcus oversaw the operation of the escalators at its

shopping facility at the time of DiChristofano's accident. *Id.* ¶ 10. Neiman Marcus contracted with Otis to perform "Maintenance Services" upon the escalator(s) at issue. Cross-cl. ¶ 2. Under the "Master Vertical Transportation Service Agreement" (the "Agreement") between Otis and Neiman Marcus, "Maintenance Services" was defined as follows:

> 1.1 When used in this Agreement, the terms Maintenance Services shall mean;
>
> a. the regular and systematic maintenance, adjustment, lubrication, replacement and repair of all components of the Vertical Transportation Equipment except as provided in Section 1.2(d).
> b. Preventative maintenance, including but not limited to, inspection of the Vertical Transportation Equipment on regularly scheduled visits to a Neiman Marcus Facility.
> c. Except as provided in 1.2(c) below, the cleaning of the Vertical Transportation Equipment, including, but not limited to, the regularly and systematic cleaning of all escalator machine rooms, hoistways, tops of cars and pits, escalator machinery space and truss areas. Once every three years escalators shall be thoroughly cleaned and inspected. Cleaning shall include the removal of a portion of the steps so that all areas of the escalator and truss can be thoroughly cleaned and lubricated. Otis will absorb any overtime incurred during this clean down process and Nieman Marcus will allow Otis access to escalators prior to store opening time.

Cross-cl. ¶ 3. Section 3.1 provides:

> Contractor shall use all reasonable care to maintain the Vertical Transportation Equipment in proper and safe working condition in accordance with the highest standards known to the industry; and shall furnish all supplies, material , parts, labor, labor supervision, tools, equipment and lubricants necessary to provide Maintenance Services. All of the foregoing furnished by contractor shall be of the highest quality.

Section 6 provides:

> Otis shall, if so directed by Neiman Marcus, cooperate in the defense of suits brought against Neiman Marcus based on accidents involving the equipment and/or service. Otis shall indemnify, and hold harmless Neiman Marcus, its affiliates and their respective directors, officers, employees, agents and representatives and their respective successors and assigns (the "Indemnified Parties"), from and against all liability, demands, claims actions or causes of action, assessments, losses, fines, penalties, costs, damages and expenses for personal injury or property damages,

2

including reasonable attorneys' fees (collectively "Damages") sustained or incurred by any of the Indemnified Parties as a result of or arising out of or relating to the work to be provided hereunder, or to the extent caused by Otis' acts or omissions, but not to the extent caused by others.

Cross-cl. ¶ 9.

Section 6 also provides in pertinent part:

> Contractor shall maintain at is own expense the following policies of insurance from reputable amounts required by law and sufficient to fully protect contractor and Neiman from an against any and all claims, damages, losses, expenses, liens, causes of action, suits, demands, judgments [sic] and liabilities, and attorneys' fees.
>
> a. Worker's compensation and employer's Liability Insurance.
> b. Commercial General Liability for Bodily Injury and Property Damages with limits per Otis' Standard Certificate.

Cross-cl. ¶ 10.

Neiman Marcus alleges that Otis and UTC breached the Agreement by denying Neiman Marcus's tender of defense and failing to procure and provide required insurance coverage.

**Standard**

When considering a Rule 12(b)(6) motion, the court must accept as true all of the allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). In order to state a claim, a plaintiff must allege facts that plausibly suggest he is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 2007 WL 1461066, *8 (May 21, 2007). To allege plausible grounds for relief, the complaint must allow a "reasonable expectation" that discovery will reveal evidence of illegality. *Id.* at 1965.

**Discussion**

<u>Neiman Marcus's allegations against UTC</u>

Neiman Marcus attached and incorporated the Agreement as Exhibit B to its Cross-claim and bases its allegations under Count II upon the terms of the Agreement. UTC is not a party to the Agreement. Neiman Marcus does not dispute that UTC is not a party to the contract and appears to be "willing to dismiss [UTC] from the Breach of Contract count of its Cross-claim." Resp., p. 1. Nonetheless, Neiman Marcus states that its "claim against [UTC] for [UTC's] own wrongdoing would still lie. As United is still potentially liable to Plaintiff, and thereby, to Neiman for contribution, Count II of Neiman's Cross-Claim should not be dismissed as to United." *Id*. This Court assumes that Neiman Marcus intended to write that Count I should not be dismissed as Count I and not Count II seeks contribution from UTC. Even if that was not Nieman Marcus's intent, under Illinois law, there is a strong presumption that parties to a contract intend that the contact's provisions apply to only them and not to third parties. *Ball Corp. v. Bohlin Bldg. Corp*., 543 N.E. 2d 106, 107 (Ill. App. Ct. 1989). In order to overcome that presumption, the implication that the contract applies to third parties must be so strong as to be practically an express declaration. *Id*. at 106. (*citing Alaniz v. Schal Associates*, 529 N.E. 2d 832 (Ill. 1998). Liability to a third party must affirmatively appear from the contract's language and from the circumstance surrounding the parties at the time of its execution, and cannot be expanded or enlarged simply because a situation and circumstances justify or demand further other liability. *Id.* There is no such express declaration or language in the Agreement nor did Neiman Marcus plead that the circumstances surrounding the Agreement's execution justify expanding the Agreement to include UTC. Therefore, Count II of Neiman Marcus's Cross-claim against UTC is dismissed with prejudice.

Neiman Marcus's allegations against Otis for failure to defend and indemnify

Otis argues that Count II should be dismissed because Section 6 of the Agreement (the "Indemnification Clause") is an exculpatory clause and is therefore void pursuant to the Construction Contract Indemnification for Negligence Act, 740 ILCS 35/1 ("the Indemnity Act").

§ 740 ILCS 35/1. [Agreements to indemnify or hold harmless]

> Sec. 1. With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

The Indemnity Act is not applicable in this case. First, Otis does not refer this Court to any case in which a court held that the Act is applicable to a contract to maintain an escalator after installation of the escalator has been completed. The likely reason is because "the Act is intended and serves to protect construction workers in the construction industry and the public as well from the dangers associated with construction work." *North River Ins. Co. v. Byer*, 655 N.E. 2d 987, 991 (Ill. App. Ct. 1995). Otis's argument that the escalator is a "structure" misses the point and ignores that the Agreement does not call for Otis to construct anything. Once the escalator is installed, as it was here, the maintenance contract only serves to protect property and people after the construction work is completed. *See id*. Rather, for incidents that occur after the escalator is installed in the building, escalator maintenance contracts fall under the tenet that parties are free to contract as they wish, and the contract that they freely enter into will be enforced unless, unlike the present case, it would be against the settled public policy of the State to do so, or there is something in the social relationship of the parties in the contract militating against upholding the agreement. *See id.*; *see*

5

*also Purolator v. Wells Fargo Alarm Service*, 491 N.E. 2d 161 (Ill. App. Ct. 1986). In declining to apply the Act to the Agreement at issue, this court recognizes the district court's holding in *Doran v. Corn Products- U.S., Div. of CPC, Int'l, Inc.* While this Court agrees that an escalator is a structure, *Doran*, 776 F. Supp. 368, 374 (N.D. Ill. 1991) (A structure is defined as "Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner."), later Illinois Appellate Court decisions declined to apply the Indemnity Act to the maintenance of structures after they are installed and this Court is obliged to follow Illinois Appellate Courts. *See North River*, 655 N.E. 2d at 991; *see also Purolator*, 491 N.E. 2d at 164-65. Furthermore, the Act only voids those agreements which purport to indemnify one for one's own negligence, and not the negligence of another, and as discussed herein, the Indemnification Clause does not indemnify Neiman Marcus for its own negligence.

Otis' second and third arguments are somewhat curious. Otis seeks dismissal of Count II on the basis that the Indemnification Clause does not explicitly require Otis to indemnify Neiman Marcus for its Neiman Marcus's own negligence. In so arguing, Otis ignores the fact that Neiman Marcus's Cross-claim seeks indemnification for Otis's negligence, and not for its own. See Resp., p. 5; Cross-cl. ¶¶ 1-22, Count II; *see also Duffield v. Marra, Inc.*, 520 N.E. 938, 944-45 (Ill. App. Ct. 1988) (In holding that the indemnity agreement was valid, the court held that the railroad was not seeking indemnity for its own negligence, but rather, was seeking indemnity for the hotel's wrongdoing).

No one, including Neiman Marcus, contends that the Indemnification Clause requires Otis to indemnify Neiman Marcus for Neiman Marcus's own negligence. The Indemnification Clause provides:

6

> Otis shall indemnify, and hold harmless Neiman Marcus...from and against all liability...sustained or incurred by any of the Indemnified Parties [Neiman Marcus] as a result of or arising out of or relating to the work to be provided hereunder, or to the extent caused by Otis' acts or omissions, *but not to the extent caused by others*. (emphasis supplied).

By this provision, Otis is responsible for indemnifying Neiman Marcus pursuant to work Otis was to perform under the Agreement (regular and systematic maintenance, preventative maintenance, and cleaning of the escalators). The Indemnification Clause explicitly states that Otis is not required to indemnify Neiman Marcus for liability "to the extent caused by others." Illinois courts have consistently held that indemnification contracts will not be construed as indemnifying against a party's own negligence unless such construction is required by clear and explicit language of the contract, or such an intention is expressed in unequivocal terms. *McNiff v. Mallard Maintenance Service Company*, 715 N.E. 2d 247, 249 (Ill. App. Ct. 1999) (*citing Westinghouse Electric Elevator c. v. La Salle Monroe Building Corp.*, 395 Ill. 429, 433, 70 N.E. 2d 604, 607 (Il. 1946). Here, the provision unambiguously provides that Otis is only responsible for indemnifying Neiman Marcus for Otis' own negligence and not that of Neiman Marcus.[1]

Next, Otis argues that even if the Indemnification Clause only requires Otis to indemnify Neiman Marcus for Neiman Marcus's own negligence, the clause is void because it is a contract for contribution. Otis cites *Herington v. Alberici* in support of its proposition. Otis misunderstands the law of contribution and indemnity and misapplies *Herington*. The two theories are entirely distinct. *See Herington*, 639 N.E. 2d at 911. ("There is an important distinction between contribution, which

---

[1] Interestingly, none of the aforementioned appears to be disputed by the parties. Neiman Marcus agrees that the provision does not call for indemnification by Otis to Neiman Marcus for Neiman Marcus's own negligence. Neiman Marcus further agrees that it has not alleged acts of negligence by Neiman Marcus for which Neiman Marcus seeks indemnity.

distributes the loss among the tortfeasors by requiring each to pay his proportionate share, and indemnity, which shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead."). Notably, the promulgation of the Contribution Act doe not affect the validity of express efforts of two parties to require one party to bear the burden of liability which may arise due to a third party's injuries. *Duffield*, 520 N.E.2d at 945; ("Promulgation of the Contribution Act has not affected the 'validity of explicit undertakings among two or more parties to shift from one party to another the ultimate cost of liability which may arise in favor of a third party.'").

Moreover, unlike the contractor in *Herington*, Neiman Marcus does not seek partial indemnity. *See Herington*, 639 N.E.2d 907, 908 (Ill. App. Ct. 1994) ("In sum, to the extent that Alberici seeks reimbursement from Sheilds based upon paragraph 8(c) of the subcontract and describes the prayer as one for 'partial indemnity' we conclude that what is really requested is contribution."). Put another way, Neiman Marcus did not seek indemnification from Otis "in such an amount as is attributable" to Otis's "share of the liability." *See id*. Rather, Count I seeks Contribution from Otis should Neiman Marcus pay more than its proportionate share of liability attributable to Otis, and Count II seeks complete indemnity from Otis for Otis's own acts of negligence pursuant to contract. The Agreement does not provide for contribution for the combined negligence of Neiman Marcus and Otis, but rather, provides for indemnification by Otis to Neiman when Otis's negligence puts Neiman in a position of defending itself against a lawsuit arising out of Otis's negligence. Additionally, unlike the clause in *Herington*, the Indemnification Clause does not fall under the Indemnity Act for the reasons set forth above.

<u>Neiman Marcus's allegations against Otis for failure to procure insurance</u>

Otis's Motion to Dismiss ignores Neiman Marcus's breach of contract claim arising out of Otis's failure to procure insurance. Because Otis did not raise arguments against Neiman Marcus's claim until its reply brief, the argument is waived. *See Luellen v. City of E. Chi.*, 350 F.3d 604, 612 (7th Cir. 2003) (Arguments raised for the first time in a reply are waived.) Moreover, this Court finds that Neiman Marcus has properly pleaded a breach of contract claim for failure to procure insurance. See Cross-cl. ¶¶ 21.

## Conclusion

For the aforementioned reasons, Defendants' Motion to Dismiss Count II of Neiman Marcus's Cross-claim is granted as to UTC, and therefore, is dismissed with prejudice. Otis's Motion to Dismiss Count II is denied as to Otis.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: October 30, 2007